## Case No. 13,684.

SWEATT v. BOSTON, H. & E. R. CO. et al.

[3 Cliff. 339; 5 N. B. R. 234; 4 Am. Law T. 174; 1 Am. Law T. Rep. Bankr. 273; 6 Am. Law Rev. 168.] [1]

Circuit Court, D. Massachusetts. Sept. 7, 1871.

BANKRUPTCY — RAILROAD COMPANIES — PRIVATE AND PUBLIC CORPORATIONS—CONSTITUTIONAL LAW—TRANSFER OF FRANCHISE.

1. Railroad companies are private commercial corporations within the meaning of section 37 of the bankrupt act [of 1867 (14 Stat. 535)], and the district courts of the United States have therefore jurisdiction to adjudge such corporations bankrupt, the same as in the case of other debtors.

[Cited in Re Independent Ins. Co., Case No. 7,017; Re Brinkman, Id. 1,884; Winter v. Iowa, M. & N. P. R. Co., Id. 17,890; Re California Pac. R. Co., Id. 2,315; Re Southern Minn. R. Co., Id. 13,188; Re Oregon Bulletin Printing & Pub. Co., Id. 10,560; Graham v. Boston, H. & E. R. Co., 14 Fed. 762; New Orleans, S. F. & L. R. Co. v. Delamore, 114 U. S. 506, 5 Sup. Ct. 1011.]

[See Adams v. Boston, H. & E. R. Co., Case No. 47; Baldwin v. Raplee, Id. 802.]

2. Characteristics of a public nature attach to every corporation, inasmuch as they are created for the public benefit; but if it is not created for the administration of political or municipal power, the corporation is private, unless the whole interest belongs to the government.

3. Transportation of freight and passengers from one state to another, or through more than one state, either by land or water, is commerce within the meaning of the provision of the constitution which gives to congress power to regulate commerce between the several states.

[Cited in U. S. v. Boston & A. R. Co., 15 Fed. 211.]

4. Congress has power to enact that railroads created by the states shall be liable to the provisions of the bankrupt act.

5. Such corporations are not among those means and instruments of the state governments over which congress has no power or jurisdiction.

6. Inasmuch as the exclusive power to establish a uniform system of bankruptcy is vested in the federal legislature, it has the power to authorize the district courts or their registers in bankruptcy to transfer the franchise of a railroad company in bankruptcy, it being a private corporation.

Proceedings in bankruptcy were instituted against the Boston, Hartford & Erie Railroad Company in the district court of this district, October 21, 1870, on the petition of Seth Adams, one of the creditors of the company, and on the 2d of March, 1871, the company was adjudged bankrupt on said petition. The petitioner for revision [Enoch G. Sweatt], also one of the creditors of the company, on the 18th of March filed a petition in the circuit court praying among other things for a revision and reversal of that decree. Further facts necessary to an understanding of the case are embodied in the opinion.

[For prior proceedings in this litigation, prosecuted in Massachusetts, see Case No. 47; in New York, Id. 152.]

J. P. Converse and E. A. Kelly, for the petitioner for revision.

B. F. Butler, C. S. Bradley, W. G. Russel, and T. K. Lothrop, for the petitioner in bankruptcy and the assignees.

R. R. Bishop, for Adams.

CLIFFORD, Circuit Justice. Circuit courts within and for the districts where the proceedings in bankruptcy are pending have a general superintendence and jurisdiction of all cases and questions arising under the bankrupt act, "and, except when special provision is otherwise made, may, upon bill, petition, or other proper process of any party aggrieved, hear and determine the case as in a court of equity." 14 Stat. 518. Evidently the revision contemplated by that clause is of a special and summary character, as sufficiently appears from the words "general superintendence" preceding and qualifying the word "jurisdiction," and more clearly from the fact that the power to revise, as conferred, extends to mere questions as well as to cases, and to every interlocutory order in the case pending the proceedings; and also from the language of the second clause of the section, that the powers and jurisdiction therein granted may be exercised either by said court, or by any justice thereof, in term time or vacation. Morgan v. Thornhill, 11 Wall. [78 U. S.] 80. Power to revise "all cases and questions" which arise in the district court under the bankrupt act is conferred upon the circuit courts by the first clause of the second section of the act, "except when special provision is otherwise made," as appears by the express words of the clause, and the further enactment is that the circuit courts in such cases may, upon bill, petition, or other proper process of any party aggrieved, hear and determine the case or question in term time or vacation as in a court of equity, showing that all congress intended by the phrase was to prescribe the rule of decision, whether it was made in court or at chambers.

Original jurisdiction in all matters and proceedings in bankruptcy is conferred upon the district courts, and they are authorized to hear and adjudicate upon the same, according to the provisions of the bankrupt act. Pursuant to that authority the district courts may exercise original jurisdiction in all suits in equity as well as in suits at law which may or shall be brought by the as-

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission. 6 Am. Law Rev. 168, contains only a partial report.]

signee in bankruptcy against any person claiming an adverse interest, or by such person against the assignee touching any property or rights of property of said bankrupt, transferable to or vested in such assignee, provided the suit shall be brought within two years from the time the cause of action accrued for or against such assignee. Three conditions must concur in order that the controversy may be cognizable under that clause of the section. It must have respect to some property or rights of property of the bankrupt transferable to or vested in such assignee, and the suit, whether it be a suit at law or in equity, must be in the name of one of the two parties described in that clause and against the other; but where they all concur, and the suit has proceeded to final judgment or decree in the district court, the cause may be removed into the circuit court for re-examination by writ of error, if it was an action at law, or by an appeal, if it was a suit in equity, provided the debt or damage amounts to more than five hundred dollars, and the proceedings to effect the removal of the cause are reasonable and correct. Appeals under that clause are too late unless the appeal is claimed and the required notices are given, within ten days from the entry of the decision or decree in the district court, and the act of congress does not give the circuit court any power to enlarge the time. None of those provisions, however, apply to petitions for revision filed under the first clause of that section, nor does the bankrupt act fix any precise limitation to the right to file such a petition in the circuit court, unless it be that the right must be exercised before the proceedings in the district court are closed. Leave to apply for such a revision is granted by the act of congress; but the act does not prescribe any limitation as to the time within which the application must be made, nor do the rules and regulations promulgated by the supreme court ordain any limitation upon the subject. Littlefield v. Delaware & H. Canal Co. [Case No. 8,400]; 14 Stat. 521. Power to make rules for the orderly conducting business in court is vested in the circuit courts as well as in the supreme court, provided such rules are not repugnant to the laws of the United States and are not inconsistent with the rules relating to the same subject established by the supreme court. 1 Stat. 83; 5 Stat. 578. Experience, though for a brief period, showed that some regulation was necessary, and the court accordingly, on the 10th of September, 1870, adopted the rule that such an application would not be entertained except by special leave of the court on good cause shown for delay, unless the aggrieved party should give the required notice within ten days from the date of the order or decree described in the petition for revision. Rendered as the decree in the district court was, more than ten days before the present petition was filed in the clerk's office of the

circuit court, the first question for consideration is whether the petition for revision is properly before the court. Petitions of the kind must be filed within ten days from the entry of the order or decree sought to be revised, unless the time on good cause shown for the delay, is enlarged by special leave of court. Seasonable application for such special leave was made to the presiding justice, but he could not hear it, as he was at the time attending to his official duties in the supreme court, nor could the circuit judge sit, as he, sitting in the absence of the district judge, rendered the decree described in the application. Necessarily postponed as the application was, it is certainly proper that the question as to the sufficiency of the cause shown for the delay in filing the petition should now be heard and determined. 16 Stat. 174.

Good cause, it is conceded, may exist for such delay, and if such cause is shown in this case the petitioner is entitled to be heard, but if not, then the petition for revision must be dismissed. On the 21st of October the original petition was presented to the district court, representing that the railroad company had committed certain acts of bankruptcy, and praying that the company might be adjudged bankrupt, as provided in section 39 of the bankrupt act. Due process was issued on the same day, returnable on the 4th of November following, and on the return day the company appeared and filed a motion to dismiss the petition for the want of jurisdiction. Both parties were subsequently heard upon that motion, and on the 18th of December last the district court, the circuit judge sitting in the absence of the district judge, overruled the motion and decided that the district court had jurisdiction of the petition. Such jurisdiction being still denied by the company, their counsel on the 23d of the same month filed an application in the circuit court, in the form of a bill in equity, to obtain a revision and reversal of that decision under the power conferred by the first clause of section 2 of the bankrupt act. Considerable delay ensued, but the petitioning creditor and the company, on the 28th of February last, filed in the clerk's office of the circuit court an agreement in writing to withdraw the application for such revision, and on the 2d of March following the corporation by consent of parties was adjudged bankrupt by the district court. Notice of that adjudication, in the usual form, directed to the present petitioner, at Woonsocket, in the state of Rhode Island, where he resides, was mailed at Boston on the 10th of the same month, and it is conceded that it was received by him at that place on the following day in due course of mail. He knew of the decision overruling the motion to dismiss the original petition, and he also knew that an application was filed in the circuit court to obtain a revision and reversal of that decision, but he did not

know that the company had been adjudged bankrupt, nor had he any knowledge of the proceedings which led to it until he received that notice. Proper steps were immediately taken to obtain a revision of that decree, but the application for the same was not seasonably filed in the clerk's office as required by the rule recently adopted by the circuit court in this district; but if the application had been filed as required, it would not have expedited the hearing, as the circuit judge could not sit in the case and the presiding justice was sitting in the supreme court. Some weight should also be given to the fact that the rule limiting the time within which such applications must be made has never been promulgated in the district where the petitioner resides. Surprise, especially when occasioned by the act of the opposite party, is often a good excuse for a want of preparation, and it cannot be doubted that the agreement of the company to withdraw the pending application for a revision of that decree had that effect upon the present petitioner. Withdrawn as the application was without notice, the act of withdrawal must have operated as a surprise to all who were interested to obtain a different result. Viewed in the light of the attending circumstances, the court is of the opinion that the cause assigned for the delay in filing the application for revision in this case is sufficient, and that the petitioner is entitled to be heard upon the merits. In re Alexander [Case No. 160], Littlefield v. Delaware & H. Canal Co. [Id. 8,400].

Three principal errors are assigned by the petitioner in support of the pending application, as showing that the order and decree of the district court should be reversed. They are in substance and effect as follows: (1) That the provisions of the bankrupt act do not apply to the corporation adjudged bankrupt by that decree, as a railroad corporation is neither a moneyed, business, nor a commercial corporation within the meaning of those words as employed in section 37 of the bankrupt act; and, therefore, that the district court had no jurisdiction of the case set forth in the original petition. (2) That it is not within the constitutional power of congress to enact that railroads created by a state shall be liable to the provisions of the bankrupt act, as such corporations are agencies and instrumentalities of the state for affording their citizens safe and convenient highways for public use, and for the transportation of passengers and freight. (3) That the district court had no jurisdiction to adjudge the railroad corporation bankrupt in this case, because all the property and assets of the company had been previously transferred to receivers appointed under a decree passed by the supreme court of the state.

Congress has the power to establish uniform laws on the subject of bankruptcies, and having exercised that power, the presumption is that it was rightly exercised, and that all persons and corporations whose pecuniary condition brings them within the provisions of the act, are entitled to the benefits which the act confers, and are made subject to all its obligations and requirements. Moneyed, business, and commercial corporations are certainly within the words of the act, as section 37 enacts that the provisions of the act shall apply to such corporations and to joint stock companies. Wherever the word "person" is used in the act, it must doubtless be construed as including corporations, as section 48 of the act so provides, but that section cannot be construed as including any corporation within the provisions of the bankrupt act, except such as are mentioned in section 37 of the act, as the rules therein prescribed regulating the proceeding in such cases do not apply to any other corporations than those previously named in the same section. Corporations not therein described are not subject to the provisions of the bankrupt act, and it is equally clear that railroad corporations are not moneyed corporations nor joint stock companies within the special meaning of that section. Argument in support of that proposition is unnecessary, as both parties agree to its correctness. Conceded as the proposition is, it may be dismissed without further explanation or remark. Jurisdiction is not claimed upon that ground, but the appellee insists that the word "commercial," as well as the word "business," preceding the word "corporations" in that clause of the section, includes railroad corporations, and that the legal effect of that clause, when properly construed, is to give the district courts the same jurisdiction in such proceedings against a railroad company as in case of other debtors. Whether the district courts have jurisdiction in such a case depends, in the first place, upon the terms of the bankrupt act, as they clearly cannot exercise any such power, unless it is conferred by that act. Power to establish uniform laws on the subject of bankruptcy throughout the United States, is vested in congress, and the proposition is beyond doubt that it is as competent for congress to apply such laws to private corporations created by the states, as to natural persons or to private corporations created by authority of congress. Much discussion of that topic is unnecessary, as the proposition is conceded by the petitioner, but he insists that railroad corporations are not private corporations, and even if they are, he denies that they are included in the words employed by congress in the bankrupt act. Public corporations are towns, cities, counties, parishes, and the like, which are created and continued for public purposes. Such institutions are the auxiliaries of the states in the important business of municipal rule, and have not the least pretension to sustain their privileges or their existence upon anything like a contract between them and the legis-

lature, as their objects and duties are incompatible with everything of the nature of compact. Bonaparte v. Camden & A. R. R. [Case No. 1,617]; Ang. & A. Corp. § 31; Bissel v. Jeffersonville, 24 How. [65 U. S.] 294. Municipal corporations are created by the authority of the legislature, and they are invested with subordinate legislative powers to be exercised for local purposes connected with the public, but all such powers are subject to the control of the legislature of the state. 2 Kent, Comm. (11th Ed.) 275. Private corporations are created by the legislature for an infinite variety of purposes, and their powers are perhaps as various as the purposes they are designed to accomplish. Characteristics of a public nature attach to every corporation, inasmuch as they are created for the public benefit, but if the corporation is not created for the administration of political or municipal power, the corporation is private, unless the whole interest belongs to the government. Banks created by the government solely for its own uses, and where the stock is exclusively owned by the government, are public corporations, but a bank whose stock is owned by private persons is a private corporation, though its object and operations partake of a public nature, and though the government may become a partner in the association by sharing with the corporators in the stock, and Chancellor Kent says that the same thing is true of insurance, canal, bridge, turnpike and railroad companies. 2 Kent, Comm. (11th Ed.) 275. When government becomes a partner in any trading company, it divests itself, so far as concerns the transactions of that company, of its sovereign character and takes that of a private citizen. U. S. Bank v. Planters' Bank, 9 Wheat. [22 U. S.] 907.

Text-writers everywhere, in treating of the subject under consideration, class railroad companies with banks, insurance companies, canal and steamship companies, turnpike and bridge companies, and assume that all such are private corporations. 1 Redf. R. R. (3d Ed.) 53. "In all these cases the uses may, in a certain sense, be public, but the corporations are private, as much so, indeed, as if the franchises were vested in a single person." Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 669. Railways are created for the purpose of carrying passengers and freight, and they are everywhere regarded as common carriers when engaged in transporting merchandise and the baggage of their passengers. Steamships which carry freight and packages for all who apply, are also responsible as common carriers. A common carrier is one who undertakes for hire to transport the goods of those who may choose to employ him, from place to place or from one port to another. He is, in general, bound to take the goods of all who offer, unless his complement for the trip is full, or the goods are of such a kind as to be liable to extraordinary danger, or such as he is not accus-

tomed to convey. Such carriers, whether by land or by water, in the absence of any legislative provisions prescribing a different rule, are insurers, and are liable in all events and for every loss or damage however occasioned, unless it happened by the act of God or the public enemy, or by some other cause or accident, without any fault or negligence on the part of the carrier, and expressly excepted in the bill of lading. The Lexington, 6 How. [47 U. S.] 381; The Cordes, 21 How. [62 U. S.] 23.

Steamship and steamboat companies, when incorporated and engaged in accomplishing the purpose for which they are created, and canal corporations not of a public character, are undoubtedly commercial corporations within the meaning of that phrase as employed in the bankrupt act, and as such are clearly subject to the provisions contained in section 39 of the same act. Created as railways are for the same general purpose as the other corporations named, they are legally known by the same denomination and are properly included in the same classification. All such corporations transact immense amounts of business, and may perhaps, in view of that fact, be well enough called business corporations, but their true legal and constitutional denomination, in the opinion of the court, is that of commercial corporations, as they are enacted for the purpose of transporting passengers and freight. which is a commercial business, as it involves intercourse and an interchange of commodities. Commerce among the states, as well as foreign commerce, is subject to the regulation of congress, and it is well-settled law that the word "commerce" includes navigation as well as traffic, and that the power to regulate extends to the vehicles of intercourse as well as to the commodities to be exchanged. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 189. Power to regulate commerce, including navigation and commercial intercourse, was one of the primary objects for which the constitution was adopted, and it is beyond every doubt that the power extends to commerce among the states as well as to foreign commerce. 2 Story, Const. (3d Ed.) 4.

Regulations of the kind may not comprehend that commerce which is completely internal, and which does not extend to or affect other states. but the railroad in question, and most others, are parts of connecting lines intended to promote commercial intercourse among several states. Such corporations, with their engines and cars. are certainly vehicles of commerce among the states, and as such are commercial corporations within the meaning of the bankrupt act, and are proper objects of regulation by congress under the grant to regulate commerce among the states. Pom. Const. Law. 244. Even an incorporated bridge company, where it appeared that the bridge was a connecting link between two railroads, was

held by the supreme court to be a commercial corporation, and no doubt is entertained but that the decision was correct. Gilman v. Philadelphia, 3 Wall. [70 U. S.] 729.

Comprehensive as the phrase, "among the states," is, it may nevertheless be restricted to that commerce which concerns more states than one, but where railroads incorporated in different states are connected in one continuous line of communication, they are clearly instruments of commerce within the meaning of the constitution, and as such are commercial corporations within the meaning of the bankrupt act, and are subject to congressional regulation. Recent decisions besides the one in this case may be referred to, in which it is held that railroad corporations are business corporations, and as such that they are subject to be adjudged bankrupt as natural persons; but some difficulties attend that conclusion, as municipal corporations and others not liable to be dealt with under that act transact vast amounts of business as well as railroad corporations. Alabama & C. R. Co. v. Jones [Case No. 126]; Rankin v. Florida, A. & G. C. R. Co. [Id. 11,-567]. Those cases and others of like character proceed upon the ground that every corporation transacting business for gain as its chief and ultimate purpose is a business corporation, and as such that it falls within the provisions of the bankrupt act, and it may be admitted that every such corporation in a general sense is a business corporation. Serious difficulties, however, are involved in the other branch of the proposition, as moneyed corporations also transact business for gain, and it is the chief and ultimate purpose of their creation; but they are not business corporations within the meaning of the bankrupt act, as they are legally and properly known by a more distinctive and characteristic denomination. Vast amounts of business are also transacted by municipal corporations, but they are not business corporations in the sense of that law, because they are created for public purposes, and exercise by delegation, a portion of the sovereign power of the state. Religious, charitable, literary, and educational corporations are not subject to the bankrupt act, nor are corporations created for political purposes, even though they or some of them may transact large amounts of business, as their chief and ultimate purpose shows that they are not properly denominated moneyed, business, nor commercial corporations. Private corporations are of many kinds, and they are known by certain appellations according to the objects for which they are created. Known as they are by some denomination significant of their distinctive characteristics, indicating their chief and ultimate purpose, there will prove to be no great difficulty in determining whether they are or are not subject to the provisions of the bankrupt act. Incorporated banks not of a public charac-

ter, and insurance companies may be mentioned as examples of the moneyed corporations described in the provisions under consideration. Veazie Bank v. Fenno, 8 Wall. [75 U. S.] 533.

Modern legislation is crowded with private charters creating business corporations in every branch of the industrial pursuits, and no doubt is entertained that all such are business corporations within the meaning of the bankrupt act, as expounded by all the courts. Corporations of a commercial character are also subject to the provisions of the bankrupt act, and there is no question that railroad corporations, as well as steamship, steamboat, and canal corporations, if the subject of private ownership, are properly included in that classification. Direct authorities may be referred to, showing that a railroad corporation is a commercial corporation, and if that be shown, it must follow, with certainty, that such corporations are subject to the bankrupt act, as they fall, in that event, within the very words of section 37. Joint-stock companies, by the Irish bankrupt and insolvent act, are made subject to its provisions, and the same act also provides that the words of the act shall include every company and body of persons associated for any banking or other commercial purpose, incorporated by statute or charter, or which derives any immunity, privilege, or power under any act of parliament, and all commercial or trading companies or partnerships, etc. Authority is given to railways by the railway acts in that jurisdiction to borrow money, and a certain railway under that authority obtained certain loans, and gave mortgages to secure the payment, with interest, on a given day. Interest not having been paid, the creditor filed an affidavit of his debt in the court of bankruptcy for the purpose of having the corporation adjudged a bankrupt. Objection was made to the application upon the ground that railways were not commercial or trading companies, but the judge of the bankrupt court overruled the objection and sustained the application. Due appeal was taken to the court of appeal in chancery, where the parties were again fully heard, and on a subsequent day the opinion was given by the chancellor. He showed, in the first place, that railways were within all the other conditions of the bankrupt act, and then proceeded to say that the only question was whether a railway "is a company for commercial or trading purposes within the signification of those terms as used in the statute," and he held that it was, chiefly upon the ground that railways are "created for the purpose of conducting the business of carriers," remarking that in general, they are common carriers, and recognized as such, with all the liability attached to that character. In re Bagnalstown & W. Ry Co., 15 Ir. Ch. 491; Ex parte Barber, De Gex, 381.

Reported cases, decided by the supreme court, confirm that construction and show to a demonstration that the transportation of passengers and freight from one state to another, or through more than one state, whether by land cr water, is commerce within the meaning of that provision of the constitution which gives to congress the power to regulate commerce among the several states. Express power to regulate commerce among the several states is given to congress, and the words of the grant comprehend every species of commercial intercourse, and the power is complete in itself, and may be exercised to its utmost extent without limitations other than such as are prescribed in the constitution. Gibbons v. Ogden, 9 Wheat. [22 U. S.] 193; Brown v. Maryland, 12 Wheat. [25 U. S.] 445; U. S. v. Coombs, 12 Pet. [37 U. S.] 78; Clinton Bridge, 10 Wall. [77 U. S.] 462; Erie Ry. Co. v. State, 31 N. J. Law, 531.

Confessedly, railroad corporations are created to transport passengers and freight, and it is that precise business in which they are employed. They must, therefore, be held to be commercial corporations. Undoubtedly the word "business," as applied to corporations, has a broader meaning than the word "commercial," as used in the same clause, but it was not the intention of congress, in the opinion of the court, to give such a scope to the word "business" as to supersede the words "moneyed" and "commercial," and leave them without any practical signification. Harris v. Amery, L. R. 1 C. P. 154.

Sufficient has already been remarked to show that railroad corporations are not public corporations, but the petitioner for revision insists that a recent decision of this court, as affirmed by the supreme court, supports the theory which he assumes in his second proposition. Buffinton v. Day, 11 Wall. [78 U. S.] 113. Taxes, in that case, were assessed against the plaintiff, under the internal revenue laws, upon his salary as judge of probate and insolvency for the county of Barnstable, in this state, and having paid the same under protest, he brought an action of assumpsit against the collector to recover back the amount, and the court held that it was not competent for congress to impose such a tax upon the salary of a judicial officer of a state. State power to lay and collect taxes for the support of their government may reach every subject over which the sovereign power of the state extends. They cannot, however, tax imports nor exports without the consent of congress, as they are prohibited from so doing by the constitution; and the power does• not extend to the instruments of the federal government nor to the constitutional means employed by congress to carry into execution the powers delegated to that government, by the constitution. Congress may lay and collect taxes, duties, imposts, and excises

to pay the debts and provide for the common defence and general welfare; but that grant of power, when properly construed, does not interfere with the power of the states to levy taxes for the support of their own governments, nor does it extend to the means and instruments of the states any more than the power of the states to levy taxes for the support of their governments can be held to extend to the means and instrument of the governments of the United States. Founded as these principles are in the nature of the government ordained by the constitution, and in the relation which the states and the United States sustain to each other under that paramount law, they are immutable, and they are expounded and illustrated by a series of the decisions of the supreme court, never surpassed in ability, wisdom, and logical power by any ever delivered from the bench of any judicial tribunal. Examined separately or as a whole, they show on the one side that the federal government, though limited in its powers, is supreme within its sphere of action; that its laws, when passed in pursuance of the constitution, form the supreme law of the land. On the other hand, they also show that the powers not delegated to the United States by the constitution nor prohibited by it to the states are reserved to the states respectively or to the people; that the exclusive powers possessed by the United States cannot be exercised by the federal government, and that the United States and the states in those respects, though exercising jurisdiction within the same territorial limits, are separate and independent sovereignties, acting separately and independently of each other within their respective spheres, just as fully "as if the line of division was traced by landmarks and monuments visible to the eye." McCulloch v. Maryland, 4 Wheat. [17 U. S.] 406; Gibbons v. Ogden, 9 Wheat. [22 U. S.] 204; Osborn v. Bank, 9 Wheat. [22 U. S.] 859; Brown v. Maryland, 12 Wheat. [25 U. S.] 448, 458; Weston v. Charleston, 2 Pet. [27 U. S.] 449; Dobbins v. Commissioners, 16 Pet. [41 U. S.] 447; .Collector v. Day, 11 Wall. [78 U. S.] 124; National Bank v. Com. 9 Wall. [76 U. S.] 361. What those cases decide, as applied to the present case, is that the states cannot tax the means or instruments of the United States, nor can congress tax the means or instruments of the state governments. By the word "means" is meant the revenue, taxes, and public securities, as applied both to the United States and the several states, and the prohibition extends to the salaries of the executive and judicial officers and to the compensation of senators, members of congress, and to that of members of the state legislatures. Officers whose compensation is derived from fees paid by those transacting business with the office stand upon a different footing, but the question whether

such compensations fall within the reciprocal exemption is not involved in this case. Even less difficulty is felt in giving examples of what is meant by the instruments of government, as that phrase is used in decided cases. Austin v. Aldermen, 7 Wall. [74 U. S.] 699; Hamilton Co. v. Massachusetts, 6 Wall. [73 U. S.] 639; Society for Savings v. Coite, 6 Wall. [73 U. S.] 604.

Instruments of government, such as are referred to, are the officers, as such, executive, legislative, and judicial, appointed or chosen to enact, execute, and expound the laws, and the public buildings erected and occupied for the uses of the government. Federal machinery is much more multifarious than that of the states, as the government of the United States is charged with the national defence, and of course our forts, navy-yards, public ships, and the like, fall within the exemption. Public corporations also fall within that exemption, but railways are private corporations, just as much as steamship and steamboat companies or canal corporations, where the stock belongs to the corporators, or as much as moneyed, manufacturing, or business corporations, all of which are created to promote the public good. Doubtless, some such corporations are more convenient and useful than others; but the question before the court is not affected by the degree of importance which attaches to the corporation. Private corporations are not instruments of the state governments, and it is settled law that railways are private corporations, as appears by many decisions of the highest character. Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 669. State governments sometimes become partners in such corporations, but the state does not, by becoming a corporator, identify itself with the corporation. Instead of that the state, in such a case, divests itself, so far as concerns the transactions of that company, of its sovereign character, and takes that of a private citizen. U. S. Bank v. Planters' Bank, 9 Wheat. [22 U. S.] 907; Union Pac. R. Co. v. Lincoln Co. [Case No. 14,378]. Apart from that proposition of the petitioner, the authority of congress to subject railroad corporations to the provisions of the bankrupt act is also denied, because it is insisted that such a corporation cannot, without distinct legislative authority, make any alienation, absolute or conditional, either of the general franchise to be a corporation, or of the subordinate franchise to manage and carry on its corporate business. Suppose it to be correct that a railroad corporation may not by its own act alienate any of its franchises, either the franchise to exist as such, or the franchise to accomplish the objects for which it was created, still it is conceded that it may transfer the same if so authorized by the state, and it is difficult to see, if the corporation is a private corporation, why the necessary power to enable the district court or the register, as the case may be, to make the transfer, may not be conferred by congress, as it is conceded that the exclusive power to establish a uniform system of bankruptcy is vested in the national legislature. 14 Stat. 522.

Express power is given to congress to establish such a law, and the constitution also provides that congress may "make all laws which shall be necessary and proper for carrying into execution the foregoing powers," and it is clear that one of the powers previously granted is the power to pass such a law. Pursuant to that power, congress has, in effect, provided that the commercial corporations shall be subject to the bankrupt act, and that all the provisions of the act applicable to the debtor, or which set forth his duties in regard to furnishing schedules and inventories, executing papers, submitting to examinations, disclosing, making over, secreting, concealing, conveying, assigning, or paying away his money or property, shall, in like manner and with like force, effect, and penalties, apply to each and every officer of such corporation or company in relation to the same matter concerning the corporation or company, and their money and property. Prior to that clause, the same section enacts that "like proceedings shall be had and taken" as are provided in the case of debtors, and the section concludes with the enactment that all property and assets of the corporation shall be distributed to the creditors of such corporations in the manner provided in this act in respect to natural persons. More satisfactory regulations for administering the bankrupt act than are found in the existing law could not well be framed; and the court, having come to the conclusion that such a corporation is a private corporation, is entirely satisfied that the section of the act which provides that the act shall apply to such a corporation is a valid law. But suppose that the franchise to be a corporation, unless assignable by the laws of the state, is not transmissible under the bankrupt act, still it is unquestionably true, as was held by the district court in this case, that the franchise to build, own, and manage a railroad, and all the property of the company, are alienable and subject to sale and transfer under the laws of the state which created the corporation. Hall v. Sullivan R. Co. [Case No. 5,948]; Union Pac. R. Co. v. Lincoln Co. [supra]. Much discussion, however, of that point is unnecessary, as the court here concurs entirely upon that topic with the views expressed by the circuit judge in disposing of the case in the district court. Adams v. Boston, H. & E. R. Co. [Case No. 47].

Extended argument to show that the third proposition of the petitioner cannot be sustained is unnecessary, as the theory of fact assumed in the proposition is erroneous, as appears by the evidence exhibited at the

hearing. All the property and assets of the company had not been previously transferred to receivers appointed under a decree passed by the supreme court of the state, which is all that need be said upon the subject.

Petition for revision denied.

[For subsequent proceedings in this litigation, prosecuted in Connecticut, see Case No. 1,677; in New York, see Cases Nos. 1,678–1,680.]