## NEW ORLEANS, SPANISH FORT AND LAKE RAILROAD COMPANY *v.* DELAMORE & Another.

IN ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Argued April 15, 1885.—Decided May 4, 1885.

This court has jurisdiction in error over a judgment in a suit in a State court determining the effect to be given to a sale of the property in controversy by order of a District Court in bankruptcy. *Factor's Insurance Co.* v. *Murphy.* 111 U. S. 738, on that point cited and applied.

The authority of the proper courts of the United States in bankruptcy to adjudicate a railroad company bankrupt, and to administer its property under the bankrupt act is regarded as settled by the practice and decisions of the Circuit Courts in several circuits.

A grant by a municipal corporation to a railway company of a right of way through certain streets of the municipality, with the right to construct its railroad thereon and occupy them in its use, is a franchise which may be mortgaged and pass to the purchaser at a sale under foreclosure of the mortgage.

There is nothing in the laws of Louisiana which forbids such transfer of a franchise to use and occupy the streets of a municipality by a railroad corporation.

All franchises of a railroad company which can be parted with by mortgage, pass to the assignee of the company in bankruptcy, and may be sold and transferred to a purchaser at a bankruptcy sale.

This was a writ of error to bring under review a decree of the Supreme Court of Louisiana reversing a decree of the Fifth District Court of the parish of Orleans.

The facts, as they appeared from the pleadings and evidence, were as follows: The Canal Street, City Park and Lake Shore

Railroad Company was a corporation organized under the general law of the State of Louisiana. By an ordinance of the City of New Orleans, numbered 2,264, administration series, dated August 5, 1873, the city granted to the corporation named, the right of way from the neutral ground in Basin Street, by certain other designated streets, and along the embankment on the western side of the Orleans Canal to the lake shore, the termini and the entire route being within the city limits. The route upon which the road was to be built was subsequently modified by ordinance numbered 2,548, administration series, dated March 24, 1874. The company constructed and used a railroad upon the right of way so granted. In the year 1876, upon a petition in bankruptcy filed by Edward B. Hampson and another, the railroad company was adjudicated bankrupt by the District Court of the United States for the District of Louisiana. Beside other property and assets surrendered by the bankrupt, were " the railroa l track, all and singular, built in pursuance of the charter of the said company, and the various grants and privileges conferred upon said company by the City of New Orleans, . . . including the road-bed of main tracks and branches, and all rights and appurtenances of said railroad tracks, as well as rights of way thereto attached, . . . and all the franchises and appurtenances " of said company.

On November 29, 1876, the assignee in bankruptcy applied to the Bankruptcy Court for an order to sell the property above described, and other assets of the company, free and clear of all incumbrances, and on May 19, 1877, the court made the order prayed for, and directed the sale to be made on the following terms : " One-third cash and the balance on one and two years' credit, to be secured by mortgage on the property sold." On July 14, 1877, the property was sold by the special master appointed by the court to Thomas H. Handy. The sale was afterwards confirmed by the court and a deed made by the master to the purchaser for the railroad and " all the right of way, powers, privileges, immunities, and franchises conferred and granted by the City of New Orleans to the Canal Street, City Park and Lake Railroad Company," by

the ordinances above mentioned. At the same time, and by the same act, Handy gave a mortgage on the property conveyed to him, to secure his notes given for two-thirds of the purchase-money. The mortgage contained the *pact de non alienando*.

On January 31, 1878, a new railroad company was organized, under authority of the general corporation law of Louisiana, bearing the same name, to wit, the "Canal Street, City Park and Lake Railroad Company," and having the same objects and purposes as the company which had been adjudicated bankrupt. To this new company Handy, on August 16, 1878, conveyed by public act the property heretofore described, purchased by him at the bankruptcy sale of the original Canal Street, City Park and Lake Shore Railroad Company, and the purchaser assumed the mortgage of Handy and his agreement to pay the balance due from him on his purchase of the property.

Before this conveyance the City of New Orleans, by an ordinance numbered 4,523, administration series, dated May 22, 1878, had granted to the second Canal Street, City Park and Lake Railroad Company the right of way upon which to lay a railroad through and on the same streets and along the same route as had been previously granted by ordinance to the first Canal Street, City Park and Lake Railroad Company.

Both Handy and the railroad company, to which he sold the property, made default in the payment of the mortgage debt, and at the suit of Elizabeth Strathman and another, holders of one of the mortgage notes made by Handy, a writ of seizure and sale was issued, and the property described in and covered by the mortgages was seized and sold to Moses Schwartz & Brother, and afterwards conveyed to them by the sheriff, by deed dated April 4, 1879.

In the meantime, on March 31, 1879, the present plaintiff, the New Orleans, Spanish Fort and Lake Railroad Company, had been organized under the general law of the State for the organization of corporations, and on April 9, 1879, Schwartz & Brother sold and conveyed to the last-named railroad company the railroad, " with all and singular the right of way, powers,

privileges, and immunities and franchises conferred and granted by the City of New Orleans to the Canal Street, City Park and Lake Railroad Company " by the ordinance of August 5, 1873, as amended by the ordinance of March 24, 1874, being the same property bought by Schwartz & Brother at the mortgage sale.

On November 15, 1879, George Delamore, one of the defendants, recovered a judgment in the Fifth District Court for the Parish of Orleans for $5,720, against the Canal Street, City Park and Lake Railroad Company, being the second company above mentioned organized under that name. Delamore, on the 11th day of November, 1879, caused execution to issue on this judgment, which, on the 18th of November, the sheriff for the Parish of Orleans levied on a certain frame building or structure, known as " the pavilion," being on the Bayou St. John, at or near the entrance thereto into the Lake Pontchartrain, and also on "all and singular the right of way, the powers, privileges, immunities and franchises conferred and granted by the City of New Orleans to the Canal Street, City Park and Lake Railroad Company, under and by virtue of an ordinance of the City of New Orleans, being No. 4,523 of the administration series adopted by the Common Council of the City of New Orleans on the 21st of May, 1878."

Thereupon the plaintiff, the New Orleans, Spanish Fort and Lake Railroad Company, filed the bill in this case in the Fifth District Court for the parish of Orleans against Delamore and the sheriff, the prayer of which was for a writ of injunction against the defendants to restrain them from advertising or selling, or offering for sale, the property so levied on, as above stated. The Fifth District Court allowed the injunction as prayed for, but on final hearing so modified it as only to restrain the seizure and sale of the rights and franchises enjoyed by the plaintiff which it acquired from Moses Schwartz, and decreed that the plaintiff be quieted in the enjoyment and possession of the said road, right of way, powers, privileges, immunities, and franchises enjoyed by it and conferred upon it by ordinance of the City of New Orleans, and dissolved the injunction so far as it restrained the sale of the property known

as the pavilion. From this decree both parties appealed to the Supreme Court of Louisiana, which by its decree restored the injunction which enjoined the sale of the pavilion, and dissolved the injunction which enjoined the sale of the rights and franchises of the New Orleans, Spanish Fort and Lake Railroad Company. The sole ground upon which the court based its decision and decree dissolving the injunction was that, by the proceedings in the bankruptcy court and the sale made by its order, Handy, the purchaser, did not acquire the right of way and the privileges and franchises granted to the bankrupt corporation by the City of New Orleans, but that the same, upon the adjudication in bankruptcy, reverted to the city.

*Mr. E. M. Johnson* (*Mr. Robert Mott* was with him) for plaintiff in error.

*Mr. Charles W. Hornor* (*Mr. William S. Benedict* was with him) for defendants in error.

Mr. Justice Woods delivered the opinion of the court. He stated the facts in the foregoing language, and continued:

The present writ of error taken by the railroad company brings up for review so much of the decree of the State Supreme Court as dissolved the injunction restraining the sale of the right of way and franchises of the plaintiff.

The defendant denies the jurisdiction of the court upon this appeal. We think the jurisdiction is clear. It is based on Rev. Stat. § 709, which provides that "a final judgment or decree in any suit in the highest court of a State in which a decision in the suit could be had . . . where any title, right, privilege or immunity is claimed under the Constitution, or any . . . statute of . . . the United States, and the decision is against the title, right, privilege or immunity specially set up or claimed under such Constitution . . . or statute, . . . may be re-examined and reversed or affirmed in the Supreme Court of the United States upon a writ of error."

The plaintiff, by its petition in this case, filed in the Fifth

District Court of the Parish of Orleans, based its demand to the relief prayed for, upon its title to the right of way, privileges and franchises derived under the provisions of the bankrupt law of the United States by which such right of way, privileges and franchises were surrendered in bankruptcy and sold and purchased under the orders and decrees of the bankrupt court. The decision of the Supreme Court of Louisiana was against the title thus specially claimed. The case, therefore, falls precisely into the class of suits described by the statute in which a writ of error lies to the highest court of a State.

The very question here presented was decided by this court in the recent case of *Factors' Ins. Co.* v. *Murphy*, 111 U. S. 738, where it was held that this court had jurisdiction in error over the judgment of the Supreme Court of Louisiana in a suit between citizens of that State for the foreclosure of a mortgage, in which the only controversy related to the effect to be given a sale of property under an order of the bankruptcy court directing the mortgaged property of the bankrupt to be sold free of incumbrances. The case is in point and decisive of the jurisdiction of this court on the present appeal.

We, therefore, proceed to consider the merits of the case. They are involved in the one question, whether the right of way and franchises granted by the City of New Orleans to the first Canal Street, City Park and Lake Railroad Company passed by the sale thereof made in pursuance of the decree of the bankruptcy court.

The jurisdiction of the bankruptcy court to adjudicate a railroad company bankrupt and to administer its property, under the bankrupt act, has been sustained by several Circuit Courts of the United States. *Adams* v. *Boston, Hartford & Erie Railroad Co.*, 1 Holmes, 30; *Sweatt* v. *Boston, Hartford & Erie Railroad Co.*, 3 Cliff. 339; *S. C.*, 5 Nat. Bank. Reg. 234; *Alabama & Chattanooga Railroad Co.* v. *Jones*, 5 Nat. Bank. Reg. 97; *Winter* v. *Iowa, Minnesota & Northern Pacific Railroad Co.*, 2 Dill. 487. No Circuit Court before which the question has been brought has denied the jurisdiction. As they were the courts of last resort upon this question, and valuable rights may depend upon their judgments upon this point, we

think the question should be considered as settled by the authorities cited, and are unwilling at this late day to re-examine it, especially as we have no jurisdiction to do so, except in a collateral proceeding like the present.

The plaintiff contends that the right of way, with the franchise to build and use a railroad thereon for profit, was surrendered by the bankrupt corporation as a part of its property, and was sold to Handy at the bankruptcy sale, and was subsequently acquired by it by means of the claim of title above set forth. It is not contended in this case that Handy acquired the franchise to be a corporation or any other franchise except those just mentioned by virtue of his purchase at the bankruptcy sale.

On the other hand, it is contended by the defendant that the right of way and the franchise to build and use a railroad thereon reverted to the City of New Orleans when the railroad company was adjudicated bankrupt, and that all that was surrendered in bankruptcy by the railroad company and sold at the bankruptcy sale or the mortgage sale, was the railroad without right of way or other franchise.

The contention of the defendant, if sustained, would entirely destroy the value of the property as a railroad. For it is plain that a large part, if not all the line, of the railroad is laid upon the streets and public grounds of the city. If, therefore, the franchise of the right to occupy the streets and public grounds with the railroad track did not pass to the purchaser at the bankruptcy sale, then all that he took by his purchase was a lot of ties and iron rails which he could be compelled at any time. by the order of the city authorities, to remove. If the law be as contended by the defendant in error, a judicial sale of the railroad and its franchises would be the destruction of both.

The ground upon which this view of the defendant is based is that the franchises of a railroad corporation are inalienable in Louisiana. In passing upon this question it is necessary to bear in mind the distinction between the different classes of railroad franchises. This was stated by Mr. Justice Curtis in the case of *Hall* v. *Sullivan Railroad Co.*, 21 Law Reporter, 138;

*S. C.*, 2 Redfield Am. Railway Cas. 621; 1 Brunner, 613, where he said: "The franchise to be a corporation is therefore not a subject of sale and transfer unless the law by some positive provision made it so and pointed out the modes in which such sale and transfer may be effected. But the franchises to build, own and manage a railroad and to take tolls thereon are not necessarily corporate rights. They are capable of existing in and being enjoyed by natural persons, and there is nothing in their nature inconsistent with their being assignable."

The same subject was considered by this court in the case of *Morgan* v. *Louisiana*, 93 U. S. 217, 223, where it was held that exemption from taxation was a right personal to the railroad corporation to which it was granted, and did not pass upon a sale of its property and franchises. Mr. Justice Field, who delivered the opinion of the court, distinguished such an immunity from taxation from those rights, privileges and immunities which, accurately speaking, are the franchises of a railroad company. He said: "The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value. . . . They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to a purchaser of the road as part of the property of the company; the latter is personal and incapable of transfer without express statutory direction."

We are of opinion that those franchises which in the case just cited are described as necessary to the use and enjoyment of the property of a railroad company are assignable in Louisiana, and that there is no warrant in the jurisprudence of that State for holding the contrary.

That the quality of being transferable attaches to such franchises of a railroad as are essential to its use and enjoyment by the company is conclusively shown by § 2396 Rev. Stat. Louisiana, Act of 1856, page 205, which was in force when the first Canal Street, City Park and Lake Railroad Company was organized, and has been in force ever since.

That section provides as follows: " In addition to the powers conferred by law upon railroad companies, any railroad company established under the laws of this State may borrow, from time to time, such sum of money as may be required for the construction or repairs of any railroad, and for this purpose may issue bonds, or their obligations secured by mortgage, upon the franchises and all the property of said companies."

The authority to mortgage the franchises of a railroad company necessarily implies the power to bring the franchises so mortgaged to sale, and to transfer them with the corporeal property of the company to the purchaser. It could not be held, that when a mortgage on a railroad and its franchises was authorized by law, that the attempt of the mortgagor to enforce the mortgage would destroy the main value of the property by the destruction of its franchises.

Since the passage of the act of 1856, the Supreme Court of Louisiana has recognized the validity of the transfer to individuals of those rights and franchises of a railroad company without which the road could not be successfully used.

In the case of *Chaffe* v. *Ludeling*, 27 La. Ann. 607, it was declared that the defendants, by their purchase at sheriff's sale of the property of the Vicksburg, Shrevesport and Texas Railroad Company, a Louisiana corporation, acquired " the privileges and franchise of the corporation, its powers to operate the railroad. The sheriff's sale made them the owners of the road, its right of way, its property, its franchise, but did not and could not make them a corporation. . . . This sale conveyed to them the rights and property of that company ; it made them joint owners thereof." *

There is, therefore, nothing in the nature of a corporate franchise under the law of Louisiana which forbids its transfer with the other property of the corporation.

And such must be the conclusion whenever a railroad company is authorized by law to mortgage its tangible property

---

* *Note by the court* —The sale in this case was made by virtue of a writ of seizure and sale issued upon a mortgage executed by the Railroad Company upon its property and franchises to secure its bonds. See *Jackson* v. *Ludeling*, 99 U. S. 513.

and franchises. When there has been a judicial sale of railroad property under a mortgage authorized by law, covering its franchises, it is now well settled that the franchises necessary to the use and enjoyment of the railroad passed to the purchasers. This was assumed to be the law by the opinion of this court pronounced by Mr. Justice Matthews in the case of *Memphis Railroad Co.* v. *Commissioners*, 112 U. S. 609, 619, where it was said : " The franchise of being a corporation need not be implied as necessary to secure to the mortgage bondholders or the purchasers at a foreclosure sale the substantial rights intended to be secured. They acquire the ownership of the railroad and the property incident to it and the franchise of maintaining and operating it as such." See also *Hall* v. *Sullivan Railroad Co.*, above cited ; *Galveston Railroad* v. *Cowdrey*, 11 Wall. 459.

It follows that if the franchises of a railroad corporation essential to the use of its road, and other tangible property, can by law be mortgaged to secure its debts, the surrender of its property, upon the bankruptcy of the company, carries the franchises, and they may be sold and passed to the purchaser at the bankruptcy sale.

The plaintiff, therefore, by virtue of the bankruptcy sale, and the subsequent mortgage sale and the several mesne conveyances mentioned, acquired with the tangible property of the original Canal Street, City Park and Lake Railroad Company the franchise granted by the City of New Orleans to lay its track over the streets and public grounds designated in the ordinance of August 6, 1873, and the amendatory ordinance of March 24, 1874. This right of way so vested could not be affected by the ordinance of the City of New Orleans to grant a similar right of way over the same streets and route to the second Canal Street, City Park and Lake Railroad Company, and the acceptance of the grant by the latter railroad company ; for, as it was not in the power of the city to repeal the grant to the first company by an ordinance passed expressly for that purpose, it could not do so by any indirect or roundabout method.

The defendants are seeking to sell, upon execution, the right

of way which the City of New Orleans, by its ordinance No. 4,523, dated May 21, 1878, attempted to grant to the second Canal Street, City Park and Lake Railroad Company, and which had already been granted to the first company of that name. In substance and in effect the right of way seized by the sheriff at the instance of Delamore, is the right of way owned by and in possession of the plaintiff, and forms a part of its property, giving value, and necessary to the use and enjoyment of the residue. The property thus seized in execution is claimed by the plaintiff, who is a third person, not a party to the judgment on which the execution is issued. This is the case provided for by Articles 395, 396, 397 and 399 of the Code of Practice, and it is under these articles that the present suit is brought and justified. We think the injunction granted by the Fifth District Court restraining the sale of the right of way and franchises of the plaintiff should not have been dissolved.

*So much of the decree of the Supreme Court of Louisiana as was appealed from in this case is, therefore, reversed, and the cause is remanded to that court, with instructions to render a decree enjoining and restraining the defendants from advertising or selling or offering for sale, upon the execution described in the bill, the right of way and franchises granted by the City of New Orleans to the Canal Street, City Park and Lake Railroad Company by ordinance No. 4,523, administration series, dated May 21, 18¡3.*