MERRITT et al. v. AMERICAN STEEL-BARGE CO.

(Circuit Court of Appeals, Eighth Circuit. June 15, 1896.)

No. 741.

CONSTITUTIONAL QUESTION—JUDGMENT OF SISTER STATE.

An issue as to whether due force and effect has been given to a judgment or decree of another state does not involve the construction or application of Const. U. S. art. 4, § 1, requiring "full faith and credit" to be given in each state to the public acts, records, and judicial proceedings of every other state, but rather involves the interpretation of Acts Cong. May 26, 1790, and March 27, 1804, declaring, in substance, that the "full faith and credit" mentioned in the constitution should consist in giving to a foreign judgment such faith and credit as it had in the courts of the state from which it was taken; and hence the circuit court of appeals has jurisdiction.

In Error to the Circuit Court of the United States for the District of Minnesota.

Frank B. Kellogg and James H. Hoyt (C. K. Davis and C. A. Severance were with them on the brief), for the motion.

A. A. Harris and Henry E. Harris, opposed.

Before CALDWELL and THAYER, Circuit Judges.

THAYER, Circuit Judge. This is a motion to dismiss the writ of error upon the alleged ground that the determination of the case "involves the construction or application of the constitution of the United States," and that the case is not within the appellate jurisdiction of this court. The question presented by the motion is novel and important. It arises in this wise: The suit was brought in the circuit court of the United States for the district of Minnesota, by Alfred Merritt and Leonidas Merritt, the plaintiffs in error, against the American Steel-Barge Company, the defendant in error, to recover damages in the sum of $500,000, for the alleged wrongful conversion by the defendant company of 11,331 shares of stock in the Lake Superior Consolidated Iron Mines, which is a corporation organized under the laws of the state of New Jersey. The defendant company pleaded in bar to said action a judgment or decree said to have been rendered by the supreme court of the city and county of New York, on October 1, 1894, in a certain suit wherein the said American Steel-Barge Company was the plaintiff, and the said Alfred and Leonidas Merritt were the defendants. The plea alleged, in substance, that the American Steel-Barge Company had held the aforesaid 11,331 shares of stock in the Lake Superior Consolidated Iron Mines in pledge to secure the payment of certain notes that had been executed and delivered by the said Alfred Merritt and Leonidas Merritt; that the aforesaid suit was brought by the barge company in said supreme court of New York for the purpose of foreclosing its alleged lien upon said stock, and securing a sale thereof to liquidate the amount due on the notes, for which the stock was held in pledge; that the shares of stock in question were within and subject to the jurisdiction of said supreme court of New York when said suit was instituted, and while the same was pending; that due notice was given to said Alfred and Leonidas Merritt of the pendency of said suit; that, after due proceedings had therein, a decree was lawfully rendered, foreclosing the barge company's lien upon said stock, and directing a sale thereof for the satisfaction and payment of the aforesaid notes; and that the judgment or decree so as aforesaid rendered was a full and complete bar to the alleged cause of action stated in the plaintiffs' complaint. On the trial below, the circuit court found and adjudged that "the proceedings and judgment of the supreme court of the city, county, and state of New York state facts which constitute a complete bar to this action, which facts were not replied to or denied by the plaintiffs"; whereupon it was ordered that a judgment be entered in favor of the defendant, the American Steel-Barge Company, and against the plaintiffs. The case was brought to this court by the plaintiffs below, to obtain a reversal of that judgment.

It is insisted in behalf of the barge company that, inasmuch as the

sole question to be determined on the present appeal is whether the circuit court gave such force and effect to the judgment of the supreme court of New York as it was its duty to give, the controversy is one which involves the construction or application of section 1, art. 4, of the federal constitution, and that this court is without power to deal with it.   The point so made is doubtless well taken if it be true, as contended, that the decision of the case does in fact involve an interpretation or application of any clause of the constitution.   We have several times held, in accordance with the plain language of the statute creating this court, that its jurisdiction does not extend to the decision of a controlling constitutional question which is fairly embodied in the record of a case, and is urged in good faith.   Railway Co. v. Evans, 19 U. S. App. 233, 7 C. C. A. 290, and 58 Fed. 433; Hastings v. Ames, 15 C. C. A. 628, 68 Fed. 726, and cases there cited; 26 Stat. 826, c. 517, § 5.   But the important inquiry in the case now in hand is whether it involves the construction of the constitution, or whether it merely requires us to construe and apply the act of congress passed on May 26, 1790, as amended by the act of March 27, 1804 (1 Stat. 122, c. 11; 2 Stat. 299, c. 56, § 2, now Rev. St. § 905), which was passed in pursuance of the power conferred by the last clause of section 1, art. 4, of the constitution. This court clearly has jurisdiction to hear and decide controversies which involve the construction of acts of congress.   Therefore, if, upon a true view of the present controversy, we are only called upon to interpret and apply the aforesaid act of congress, the case at bar falls within our jurisdiction, and the motion to dismiss the writ of error should be denied.

Turning, then, to a consideration of the question last suggested, it is to be observed that section 1, art. 4, of the constitution does not, in terms, prescribe the effect that shall be given to a judgment rendered in one state by the courts of another state.   The language of the constitution is as follows:

"Full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state. And the congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

Following the adoption of the constitution, the congress of the United States passed the acts of May 26, 1790, and March 27, 1804, supra, whereby it provided that:

"The records and judicial proceedings of the courts of any state or territory * * * shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from which they are taken."

It would seem, therefore, that the effect to be given to a foreign judgment is defined and declared by the act of congress aforesaid, as the framers of the constitution contemplated that it should be, and that, whenever the question arises whether due force and effect has been given to a foreign judgment or decree, the decision of the

case does not involve a constitutional question, but depends, rather, upon the proper interpretation of an act of congress. If the congress had not seen fit to legislate concerning the effect to be given in the several states to the judgments of sister states, it would, doubtless, be true that, whenever the effect of a foreign judgment was drawn in question, it would give rise to the inquiry whether such full faith and credit had been accorded to it as the constitution requires. But congress did see fit, at an early day, to legislate on this subject. It declared, in substance, that the "full faith and credit" mentioned in the constitution should consist in giving to a foreign judgment such faith and credit as it had by law or usage in the courts of the state from which it was taken. On the present occasion it is not claimed, and, so far as we are aware, it never has been claimed, that the mandate of the constitution requiring "full faith and credit" to be given to foreign judgments has the effect of giving to such records any greater or less force or efficacy than they would be entitled to under the act of congress aforesaid. It has never been suggested, so far as we are able to discover, that the national legislature failed, in any respect, to properly exercise the power conferred by section 1, art. 4, of the constitution. Such being the fact, the true view is, we think, that inasmuch as the congress of the United States has prescribed the effect to be given to foreign judgments, and has done so in a way which meets all the requirements of the organic law, the act of congress, rather than the constitution, furnishes the rule by which to determine in any given case whether due weight has been given to an authenticated copy of a foreign judgment. It follows, therefore, that, while controversies respecting the effect of a foreign record do in fact involve a federal question arising under the laws of the United States, yet they do not in any proper sense involve either the construction or the application of the constitution of the United States.

In support of the contention that the case at bar involves a constitutional question, and is not within the jurisdiction of this court, counsel for the defendant in error have directed our attention to the following authorities: Crescent City Live-Stock Co. v. Butchers' Union Slaughterhouse Co., 120 U. S. 141, 7 Sup. Ct. 472; Embry v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25; Railroad Co. v. Delamore, 114 U. S. 501, 5 Sup. Ct. 1009; Insurance Co. v. Murphy, 111 U. S. 738, 4 Sup. Ct. 679. With reference to the decisions in these cases, it is sufficient to say that they are not in conflict with the views heretofore expressed. The cases in question came to the supreme court of the United States from the supreme courts of the states of Louisiana and Connecticut, under that clause of section 709 of the Revised Statutes which permits a writ of error to be issued to the highest court of a state when "any title, right, privilege, or immunity is claimed under the constitution, or any treaty or statute of, or commission held, or authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed, by either party, under such constitution, treaty, statute, commission, or authority." It will be apparent, therefore, that the existence of a federal question arising under any law of the

United States, whether legislative or organic, was sufficient to support the jurisdiction of the federal tribunal, which was in those cases assailed, and that it was wholly unnecessary to consider or decide whether the decision turned upon the proper construction or application of the federal constitution, or whether it turned upon the proper interpretation of section 905 of the Revised Statutes. This latter question, which is the precise point involved in the case at bar, was in no wise considered or discussed. It is important to observe, however, that the decisions referred to deal almost exclusively with the question whether the state courts from which the several appeals had been taken had given to the foreign judgments involved such force and effect as is prescribed by the act of congress; and to this extent it may be fairly claimed that, in so far as the decisions have any bearing upon the case at bar, they tend to confirm the opinion heretofore expressed that in every instance the effect of a foreign judgment, when it is called in question, must be tested by the language contained in the act of congress, rather than by the more general phrase found in section 1, art. 4, of the constitution.

In conclusion, and as tending to throw further light upon the true relation which the act of congress of May 26, 1790 (now section 905 of the Revised Statutes), bears to the constitution, it will not be out of place to quote at some length from the language of Mr. Justice Wayne in the leading case of McElmoyle v. Cohen, 13 Pet. 312, 325, where this subject was exhaustively considered. The learned justice said:

"It must be obvious, when the constitution declared that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state, and provides that congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof, that the latter clause, as it relates to judgments, was intended to provide the means of giving to them the conclusiveness of judgments upon the merits, when it is sought to carry them into judgments by suits in the tribunals of another state. The authenticity of a judgment, and its effect, depend upon the law made in pursuance of the constitution. The faith and credit due to it as the judicial proceeding of a state is given by the constitution, independently of all legislation. By the law of the 26th of May, 1790, the judgment is made a debt of record, not examinable upon its merits; but it does not carry with it into another state the efficacy of a judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there, and can only be executed in the latter as its law may permit. It must be conceded that the judgment of a state court cannot be enforced, out of the state, by an execution issued within it. This concession admits the conclusion that, under the first section of the fourth article of the constitution, judgments out of the state in which they are rendered are only evidence in a sister state that the subject-matter of a suit has become a debt of record, which cannot be avoided but by the plea of nul tiel record. * * * When our Revolution began, and independence was declared, and the confederation was being formed, it was seen by the wise men of that day that the powers necessary to be given to the confederacy, and the rights to be given to the citizens of each state, in all the states, would produce such intimate relations between the states and persons that the former would no longer be foreign to each other, in the sense that they had been as dependent provinces; and that, for the prosecution of rights in courts, it was proper to put an end to the uncertainty upon the subject of the effect of judgments obtained in the different states. Accordingly, in the articles of confederation there was this clause: 'Full faith and credit shall be given in each of these states to the records, acts and ju-

dicial proceedings of the courts and magistrates of every other state.' Now, though this does not declare what was to be the effect of a judgment obtained in one state in another state, what was meant by the clause may be considered as conclusively determined, almost by contemporaneous exposition; for, when the present constitution was formed, we find the same clause introduced into it, with but a slight variation, making it more comprehensive, and adding, 'Congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof;' thus providing in the constitution for the deficiency which experience had shown to be in the provisions of the confederation, as the congress under it could not legislate upon what should be the effect of a judgment obtained in one state in the other states. Whatever difference of opinion there may have been as to the interpretation of this article of the constitution in another respect, there has been none as to the power of congress under it to declare what shall be the effect of a judgment of a state court in another state of the Union. Here, again, we have contemporaneous legislative interpretation of the first section of the fourth article of the constitution; for by the act of May 26, 1790, it was declared 'that the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken.'"

See, also, Mills v. Duryee, 7 Cranch, 481, 484; Thompson v. Whitman, 18 Wall. 457, 461; D'Arcy v. Ketchum, 11 How. 165, 175; Renaud v. Abbott, 116 U. S. 277, 286, 6 Sup. Ct. 1194; Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242; Green v. Van Buskirk, 7 Wall. 139.

We may further add that, if the view contended for by the defendant in error should prevail, then it would follow that whenever it happens that a foreign judgment or decree is either pleaded or given in evidence on the hearing of a cause, and an issue is raised as to its effect, such cases would not be subject to review by this court. We are not satisfied that such is the law; but, for the reasons heretofore stated, we are constrained to hold that such cases merely involve the proper application of the act of congress of May 26, 1790 (now section 905 of the Revised Statutes), and that they properly fall within the appellate jurisdiction of this court. If any doubt, however, should be entertained by the plaintiffs below of the soundness of this view, it is still within their power to prosecute a writ of error to the supreme court of the United States, notwithstanding the fact that the record has been lodged in this court. As at present advised, the motion to dismiss the writ of error should be overruled; and it is so ordered.