In re NEW YORK & NEW JERSEY ICE LINES.

In re HEWITT et al.

(Circuit Court of Appeals, Second Circuit. May 22, 1906.)

No. 214.

1. BANKRUPTCY—CORPORATIONS SUBJECT TO ACT—CONSTRUCTION OF STATUTE.
    The provisions of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], enumerating the classes of corporations subject to the act, is to be strictly construed, and includes only such corporations as are clearly within the enumeration.
    [Ed. Note.—What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

2. SAME—ICE COMPANY.
    A corporation organized to buy, gather, store, and preserve ice, to ship and vend the same, and which carried on its business by renting small bodies of water from which it cut the ice which it stored, shipped, and sold, only two or three times in a number of years buying small quantities of ice when its own supply ran short, is not engaged principally in manufacturing, trading, or commercial pursuits, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and is not subject to involuntary proceedings in bankruptcy.
    [Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Bankruptcy, § 17.]

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here upon appeal from a decree holding that the corporation could not be adjudicated a bankrupt and dismissing the petition for such adjudication.

H. B. Clossan, for appellants.

Selden Bacon, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. The New York & New Jersey Ice Lines is a corporation organized under the statutes of New Jersey for the following objects:

"To buy, gather, store and preserve ice; to prepare it for sale, to transport it to the cities of Jersey City, New York and elsewhere and to vend the same, to contract with others and hire the necessary material for the performance or accomplishment of the said objects," etc.

The work that the company has actually done under this charter has been the gathering, storing, and preservation of ice, the transportation of it to the places of demand, and the selling of it there. Once in a great while, about two or three times in 13 years, it bought a little ice in Maine for its customers when its own supply ran short. What it did was to rent small bodies of water, or secure easements therein, and to harvest the ice which formed thereon during the winter. The only question in the case is whether such a corporation may be adjudicated an involuntary bankrupt, under the act of 1898. The relevant section is:

"Sec. 4b. * * * any corporation engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits * * * may be adjudged an involuntary bankrupt," etc. Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423].

This section was amended in 1903 by inserting the word "mining" after the word "publishing."

The Bankrupt Act of 1867 covered "all moneyed business or commercial corporations and joint-stock companies." This was a very comprehensive clause, and when Congress in a later act undertakes, in place of it, to give a specific enumeration of the particular kinds of business in which corporations must be "principally engaged" in order to bring them within the terms of the act, it is to be assumed that the words of such enumeration were used ex industriâ to restrict the provisions of the statute to such corporations only as are clearly within the enumeration. This interpretation is apparently confirmed by the amendment above referred to. Before amendment efforts were made in several districts to secure an adjudication in bankruptcy of different mining companies on the ground that they were engaged in manufacturing or trading or mercantile pursuits. Such applications were unsuccessful. In re Woodside Coal Co. (D. C.) 105 Fed. 56 (and cases there cited) ; In re Keystone Coal Co. (D. C.) 109 Fed. 872. Thereupon Congress extended the provisions of the act to such companies; but it did so, not by the use of broad general language, but by the addition of another specific designation. In re H. J. Quimby Freight Co. (D. C.) 121 Fed. 141. If "mining" could not be fairly included within the words "manufacturing, trading or mercantile pursuits," it is difficult to see upon what principle that phrase could be extended to include the harvesting, storage, and preservation of ice, even though it had to be cut in order to harvest it and was eventually sold.

The appellant relies upon the decision of Judge Archbald in First National Bank v. Wyoming Valley Ice Co. (D. C.) 136 Fed. 466 ; but it is manifest from an analysis of his opinion that he found the ice company to be a trader only, because a "material part" of its business was the buying of ice from third persons and the reselling of that ice to its customers. The court in that case seems somewhat to have enlarged the statute, which enumerates corporations "engaged principally in trading," words which would seem to mean more than a "material part of whose business is trading." But the citation in no respect fits the case at bar. The amount of ice purchased from third persons at rare intervals was so small as to be negligible.

Other authorities referred to by the respective parties will be found cited in the opinion of the referee. The district judge did not write. Little light is thrown upon the question by decisions not concerned with this act, which for the reason above set forth should, in this particular, be strictly construed. The principles laid down in the mining cases seem conclusive of the case at bar.

The decree is affirmed.