### In re KINGSTON REALTY CO.

(District Court, E. D. New York. October 28, 1907.)

1. BANKRUPTCY—CORPORATIONS SUBJECT TO ACT—NATURE OF BUSINESS

The jurisdiction of a court of bankruptcy to adjudicate a corporation a bankrupt as one engaged principally in manufacturing, trading, or mercantile pursuits, etc., within the meaning of Bankr. Act 1898, § 4b, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], is to be determined by the business in which the corporation was actually principally engaged at the time of the filing of the petition, and it is not a defense to the proceeding that such business was ultra vires.

2. SAME—"TRADING" AND "MERCANTILE PURSUITS" DEFINED.

The terms "trading" and "mercantile pursuits" as used in Bankr. Act 1898, § 4b, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], are not confined to chattels, but may include dealing in real estate; and a corporation, organized for "purchasing, holding, improving by grading, paving, sewering, and construction of houses and other buildings, and the selling and leasing of real estate" which carried on all of such business, and also incidentally manufactured building materials which it both used and sold, is within the statute and may be adjudged an involuntary bankrupt.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, pp. 4477, 4478; vol. 8, pp. 7053, 7054.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

In Bankruptcy. On petition in involuntary bankruptcy.

George D. Beattys, for petitioning creditors.
Hamilton & Beckett, for intervening respondent creditor.

CHATFIELD, District Judge. The bankrupt corporation was organized under and by virtue of the laws of the state of New York in January, 1903, to carry on the "purchasing, holding, improving by grading, paving, sewering, and construction of houses and other buildings, and the selling and leasing of real estate in the borough of Brooklyn, city of New York." An involuntary petition in bankruptcy, followed by the appointment of a receiver, is now opposed by the answer of an intervening creditor, on whose application an execution had been levied just prior to the filing of the petition herein. This creditor raises the issues of insolvency, and the validity and amount of the

petitioning creditors' claims. He also attacks the jurisdiction of this court, on the ground that the alleged bankrupt is not a corporation "engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits."

Testimony has been produced upon the trial of this issue to the effect that the corporation has bought and sold land, both vacant and improved, built houses on other persons' property, and on their own land, made concrete blocks and other building materials and articles out of brick, cement, and stone, sometimes using and sometimes selling the product, sold the land with the houses built by them, bought brick and builders' supplies, of which part was used and part sold, if a profit could be obtained, leased and maintained buildings of all sorts, and, in short, carried on all of, and more than, the business authorized by its certificate of incorporation. Under the guise of "holding and leasing," it has also within a year maintained and run, as proprietor, a large hotel building in Brooklyn, in which apartments are rented, but the expense of the office, restaurant, and general service was paid for by the alleged bankrupt corporation. A summer hotel was also built and run during a preceding season by this corporation, but this was not open at the time of filing the petition herein. The testimony sufficiently shows insolvency and the existence of the petitioning creditors' claims, to an amount over $1,000.

The issue which must be considered therefore is whether the corporation was engaged in such a business at the time of filing the petition, or within a reasonable period prior thereto, as to give this court jurisdiction to act in bankruptcy, under the language of the statute above quoted. The creditor makes the objection that some of the activities of this corporation seem to be ultra vires. It is claimed on his behalf that advantage cannot be taken of certain incidental forms of business which might be deemed "manufacturing." It might just as pertinently be urged in opposition that this creditor lays great stress upon the argument that running a hotel is not such a business as to bring a corporation within the bankruptcy statute. In re U. S. Hotel Co., 134 Fed. 225, 67 C. C. A. 153, 68 L. R. A. 588. Surely there is considerable ground for doubt as to the right to carry on the hotel business under the charter of the company. But this argument of ultra vires does not seem to apply. A corporation acting ultra vires would not be allowed to prove its own wrongdoing, in order to avoid the words of the statute "engaged principally in." The certificate of incorporation is not conclusive, and the actual principal occupation is the basis of jurisdiction.

But in the case at bar, aside from incidental ventures or opportunities for a profitable sale, appearing in the course of its regular business, how is the Kingston Realty Company shown to be engaged principally in "manufacturing, trading, or mercantile pursuits?"

The bankruptcy law of 1867 (14 Stat. 535, c. 176, § 37; Rev. St. 1878, tit. 61, c. 6, § 5122) contained the following language: "All moneyed business or commercial corporations and joint-stock companies." This provision was changed, and the scope of the bankruptcy act limited and more specifically defined by Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418], a mining corporation being spe-

cifically included by the amendment of 1903. Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 682].

It has been universally held that the law must be construed strictly (In re N. Y. & N. J. Ice Lines, 147 Fed. 214, 77 C. C. A. 440), and the production, care, storage, and sale of ice is in that case held to be neither manufacturing nor trading. But much conflict has arisen, and the various opinions interpreting the word "manufacturing" were recited and carefully analyzed in the case of In re First Nat. Bank of Belle Fourche et al., 152 Fed. 64, at page 67, 81 C. C. A. 260. Therein the court takes a broad view of the scope of this statute, and the same position has recently been taken by the District Court of the Southern District of New York. In re Church Const. Co. (decided April 3, 1907) 157 Fed. 298.

Upon motion, the petitioning creditors herein have been allowed to include the allegation of "manufacturing" in their petition against the Kingston Realty Company; but it seems to the court that whatever manufacturing business was done by the Kingston Realty Company, even if the term "manufacturing" be taken in its broadest sense, was merely in the carrying on of incidental and comparatively small portions of its entire activities, with one exception. When occupied in putting up houses for the purpose of sale, and in preparing parts of those houses, the Kingston Realty Company was "manufacturing," within the language of the cases above cited, especially that of In re First Nat. Bank of Belle Fourche, supra, which is the latest authoritative interpretation of the statute. It would be difficult to determine whether this business of building houses occupied to a majority extent the activities of the company, even when in the full course of building operations; but, in the long run, it seems impossible to consider that any work which could be called "manufacturing" could be said to have been the principal pursuit in which the company was engaged, and we must therefore consider whether it was engaged in a trading or mercantile pursuit before coming to a conclusion. These terms, "trading" and "mercantile," have also been the basis of many interpretations and many decisions. In re U. S. Hotel, supra; In re N. Y. & N. J. Ice Lines, supra; In re N. Y. & Westchester Water Co. (D. C.) 98 Fed. 711; In re Phila. & Lewes Trans. Co. (D. C.) 114 Fed. 403; In re Surety Guarantee & Trust Co., 121 Fed. 73, 56 C. C. A. 654; In re MacNichol Construction Co., 134 Fed. 979 (D. C.) affirmed Butt v. C. F. MacNichol Const. Co., 140 Fed. 840, 72 C. C. A. 252; and many others.

The primary distinction between real estate and personal property is urged by the objecting creditors. It is argued, and some of the cases cited seem to uphold the idea, that "trading and mercantile pursuits" implies merely shopkeeping, or the buying and selling of chattels, and what is ordinarily known as merchandise. But, as we have seen, the general tendency of the courts with reference to the word "manufacturing" has been to obliterate the arbitrary distinction between the product of a factory and the product of a manufacturing process, even if the latter is applied to fixtures or portions of real estate. It is difficult to see, under such an interpretation of the statute, why "trading and mercantile pursuits" should be confined to chat-

tels. There is nothing in other parts of the statute to indicate the intention of Congress, and the words would seem to have been chosen with a view to covering occupations in which there were tangible assets, upon which a holding out and obtaining of credit had been existent, rather than to arbitrarily draw the line between different business concerns, occupying stores and offices in similar ways, but differing in the nature of the commodity in which they are dealing.

Farmers, tillers of the soil, etc., are omitted because of public policy, but mining corporations were included by express amendment, when the attention of Congress was called to the fact that they were neither manufacturing, trading, or mercantile corporations. And this amendment would indicate that Congress had not only an intent to exclude corporations not specifically covered, but also an intent to have the language of the statute applied to all corporations included in the terms used, without distinction as to their dealing in realty or personal property. The words "tradesman" and "in trade" have a meaning frequently applied as the opposite of living upon an income or salary, and the term "mercantile pursuit," in the divergent and extremely specialized occupations of the present day business man, for which occupations the present bankruptcy statute must have been intended to provide, cannot be limited to a narrow etymological definition. If the uniform tendency of the courts in construing the bankruptcy statute strictly had been to exclude everything except those occupations coming under some dictionary definition, it might be easy to follow the line of demarcation, and to hold that the Kingston Realty Company was without the scope of the term. But in the light of the application of the statute, which has been made by the various courts in the direction of including occupations not plainly intended by the act of Congress to be excluded, the Kingston Realty Company must be considered to have been principally engaged in a trading and mercantile pursuit, as well as incidentally doing some manufacturing.

As to the hotel business, the corporation was apparently drifting away from the occupations in which it had been previously engaged. The conveyances of its real estate as security within a short time prior to the filing of a petition in bankruptcy, and the taking up of the management of this hotel, were fast producing a condition in which all semblance of a realty company might have been lost. But within a short time before the filing of the petition the corporation was occupied in such a business that its creditors could properly rely on the protection of the bankruptcy statutes, and the testimony adduced does not show, in the opinion of the court, a departure from the regular business of the Kingston Realty Company to such an extent as to indicate that it was principally engaged in other than manufacturing, trading, and mercantile pursuits.

The issues as to insolvency, the amount and validity of the petitioning creditors' claims, and the jurisdiction of the court, upon the grounds of occupation, will be decided in favor of the petitioning creditors, and a decree may be submitted accordingly.