## Case No. 47.

ADAMS v. BOSTON, H. & E. R. CO.

[Holmes, 30;[1] 4 N. B. R. 314, (Quarto, 99;) 5 Amer. Law Rev. 375; 18 Pittsb. Leg. J. 154.]

District Court, D. Massachusetts. Dec., 1870.[2]

BANKRUPTCY—"BUSINESS CORPORATION"—ACT OF 1867—RAILROAD COMPANIES.

A railroad corporation is a "business" corporation, within the meaning of the thirty-seventh section of the bankrupt act of 1867.

[Cited in Alabama & C. R. Co. v. Jones, Case No. 126; In re California Pac. R. Co., Id. 2,315; Winter v. Iowa, M. & N. P. Ry. Co., Id. 17,890; In re Oregon, B. P. & P. Co., Id. 10,560; New Orleans, S. F. & L. R. Co. v. Delamore, 5 Sup. Ct. Rep. 1011, 114 U. S. 501.]

In bankruptcy. Motion to dismiss a petition in bankruptcy filed against the Boston, Hartford, and Erie Railroad Company, for want of jurisdiction. [Overruled.]

[Enoch G. Sweatt, another creditor, afterwards presented a petition for review to the circuit court, which petition was denied. Sweatt v. Boston, H. & E. R. Co., Case No. 13,684.]

B. R. Curtis and B. F. Brooks, for the motion.

B. F. Butler, C. S. Bradley, W. G. Russell, and T. K. Lothrop, for petitioner.

SHEPLEY, Circuit Judge. This is a motion to dismiss the petition in this case, upon the ground that railroad corporations are not included within the provisions of the thirty-seventh section of the bankrupt act, and not subject to the process provided by the act, and that therefore this court has no jurisdiction in bankruptcy to entertain this petition.

The first ground of objection to the jurisdiction of the court is, that a railroad corporation is a public corporation, created for a public purpose, and bound to the state for the performance of a public duty. The thirty-seventh section of the bankrupt act provides as follows: "The provisions of this act shall apply to all moneyed, business or commercial corporations and joint-stock companies." Section 58 enacts: "The word 'person' shall also include corporations." Section 58 is not, however, to be construed as applying the word "person" to include any

---

[1][Reported by Jabez S. Holmes, Esq., and here reprinted by permission.]
[2][Affirmed by circuit court, in Sweatt v. Boston, H. & E. R. Co., Case No. 13,684.]

other corporations as subject to the provisions of the act than those described in the thirty-seventh section. Public corporations, created for municipal or political purposes, and such private corporations as are ecclesiastical, or eleemosynary, or established for the advancement of learning, are clearly not made subject to the provisions of the act. Private corporations are divided into ecclesiastical and lay. Lay corporations are divided into civil and eleemosynary. Civil corporations are created for an infinite variety of purposes; such as affording facilities for obtaining loans of money, the making of canals, turnpike roads. and the like. The words of the thirty-seventh section, "moneyed, business or commercial corporations," would seem to have been intended to embrace all those classes of corporations that deal in or with money or property in the transactions of money business or commerce for pecuniary gain, and not for religious, charitable, or educational purposes. Accordingly, district courts of the United States in various districts have treated manufacturing, mining, and similar corporations, and in one circuit at least, railway corporations, as subject to be dealt with under the provisions of the bankrupt act. But it is contended that the public purposes for which railways are created, and the public duties they are bound to perform, make them public corporations; and therefore such a construction should be given to the words of the statute as would exclude them from its operation. In the popular meaning of the term, nearly every corporation is public, inasmuch as they are created for the public benefit. But if the whole interest does not belong to the government, or if the corporation is not created for the administration of political or municipal power, the corporation is private. "Strictly speaking," says Mr. Justice Story, in Dartmouth College v. Woodward, 4 Wheat. [17 U. S.] 669, "public corporations are such only as are founded by the government for public purposes, where the whole interests belong also to the government. If, therefore, the foundation be private, though under the charter of the government, the corporation is private, however extensive the uses may be to which it is devoted, either by the bounty of the founder or the nature and objects of the institution. . . . A bank whose stock is owned by private persons is a private corporation, although it is erected by the government, and its objects and operations partake of a public nature. The same doctrine may be affirmed of insurance, canal, bridge, and turnpike companies. In all these cases the uses may, in a certain sense, be called public; but the corporations are private, as much so, indeed, as if the franchises were vested in a single person."

The case of Treadwell v. Salisbury Manuf'g Co., 7 Gray, 393, 404, cited as an authority in support of the position that this is a public corporation, is not, in fact, in conflict with the opinion of Mr. Justice Story just quoted. In the learned opinion of Judge Bigelow, in that case, he does refer to "corporations established for objects quasi public,. such as railway, canal, and turnpike corporations;" but he does not describe them as public corporations, but only as corporations established for objects quasi public. Neither upon principle nor authority can this corporation be properly classed among public corporations, or on that ground exempted from the operation of the bankrupt act. It is further contended, however, that the legislature of Massachusetts, in creating this corporation, has subjected it to certain duties and liabilities; that these liabilities are not transmissible, that these duties cannot be delegated, that the corporation cannot divest itself of the power it has of performing those duties; "that it is a Massachusetts corporation, a creature of the laws of Massachusetts, placed under the supervision of the authorities and the courts of Massachusetts, and liable to perform certain duties which, by the laws of Massachusetts, cannot be performed by any person to whom its property may be transferred or its franchises delegated." The force of this argument, which seems to apply solely to Massachusetts corporations, and to claim the application to Massachusetts railroad corporations of a special exception from the operation of the bankrupt act, independent of and distinct from any rule which may apply to railway corporations existing under the laws of other states, is somewhat impaired by the fact that the duties of this corporation have been delegated, and are now delegated, by the action of the supreme court of Massachusetts, to a board of receivers; that by the action of the same distinguished tribunal this corporation has been and now is in fact divested of the power of performing its public duties, and that it is not now, by reason of the action in the premises of the highest judicial tribunal in the commonwealth, in the possession or exercise of its franchises, so far as those franchises confer upon it the power to build, operate, and control the railroad. And we look in vain into the legislation of Massachusetts for any indication of public policy to exclude the property of railroad corporations, or such of their franchises as are in their nature assignable and transmissible, from the liability to be taken by due process of law and applied to the payment of corporate debts.

East Boston Freight R. Co. v. Hubbard, 10 Allen, 459, note, is a case where the Grand Junction Railroad and Depot Company became insolvent, and George W. Gordon, a creditor, recovered judgment; and the sheriff levied his execution upon the franchise, and sold the same, with all the rights and privileges so far as related to the receiving of tolls for the term of ninety-nine years. The title of the purchaser at

the sheriff's sale was upheld by the court. A corporation, created for the purpose of constructing, owning, and managing a railroad, cannot, it is true, make any alienation of its general franchise to be a corporation, or its subordinate franchises to manage and carry on its corporate business, without distinct legislative authority. Such is the law in England. Winch v. Birkenhead R. Co., 13 Eng. Law & Eq. 506; South Yorkshire Ry. Co. v. Great Northern R. Co., 19 Eng. Law & Eq. 513; Shrewsbury & B. Ry. Co. v. London & N. W. Canal Co., 21 Eng. Law & Eq. 319; and in Massachusetts, Hendee v. Pinkerton, 14 Allen, 381; Richardson v. Sibley, 11 Allen, 65; Com. v. Smith, 10 Allen, 455. This distinct legislative authority for the alienation of the assignable and transmissible franchises of railroads to carry on their business of managing a railroad and taking tolls has been freely accorded in Massachusetts; and the public policy of the commonwealth embodied in its legislation allows a creditor to sell these franchises on execution, and permits the corporations, within prescribed limits, to alienate them for the payment of debts or the security of creditors. Gen. St. Mass. c. 63, § 120 et seq.; Id. c. 68, §§ 25, 26.

It is contended that the authority given in the Massachusetts statute to attach and levy on "the franchise of a turnpike or other corporation authorized to take tolls" does not include railroad corporations; that the words "authorized to take tolls" are only applicable to turnpike, canal, lock, and bridge corporations, and not to railroads. An examination, however, of the legislation of Massachusetts will show that "an authority to take tolls" is given as one of the franchises of railroad corporations, and that similar words of description of such a franchise are found in all the general and special laws relating to such corporations. Similar words are also used as apt words of description in the judicial decisions of Massachusetts and other states, and in the decisions of the courts of the United States. Section 112, c. 63, Gen. St. of Massachusetts, relating to railroad corporations, provides, "Each corporation may establish, for its sole benefit, a toll upon all passengers and property conveyed or transported on its road." This form of expression is found in all the early railroad charters in this country; and has been continued in use, so far as we are able to discover, to the present time. Section 5 of the act to establish the Boston and Lowell Railroad corporation enacts "that a toll be and hereby is granted and established, for the sole benefit of said corporation, upon all passengers and property of all descriptions which may be conveyed or transported upon said road." The same right to take toll is conferred in the charter of the Boston and Providence Railroad, and continued in use in the charters granted to other railroads until embodied in the general legislation respecting railroad corpora-

tions; after which the charters of many railroad corporations, and among others of those whose franchises have been since transferred to the Boston, Hartford, and Erie Company, contained provisions conferring upon them the rights and subjecting them to the liabilities provided in the thirty-ninth and forty-fourth chapters of the Revised Statutes. Section 83, c. 39, Rev. St. 1836, provides, "Every such corporation may establish, for their sole benefit, a toll upon all passengers and property," &c. If, therefore, the questions had not been previously decided by the supreme court of Massachusetts, whose decision this court would adopt on a question of the construction of a statute of the state, we should have no hesitation in deciding that railroad corporations were subject to the provisions of the twenty-fifth and twenty-sixth sections of the sixty-eighth chapter of the General Statutes of Massachusetts, as "corporations authorized to take tolls." The supreme court of the state has so considered the law in the cases before cited. But it is not believed that the question, whether railroad corporations are subject to be dealt with under the provisions of the bankrupt act, is one the solution of which is dependent upon the special provisions of the statutes of the several states regulating the transfer of the corporate property or franchises, or the mode of applying them to the payment of the corporate debts.

The grant of constitutional power to congress to establish uniform laws on the subject of bankruptcies throughout the United States is general in its terms and unlimited. It was not doubted, at the argument on this motion, that it applied as well to corporations as to natural persons. The only question which can arise is, whether congress has, by appropriate legislation in the exercise of its powers conferred by the constitution, rendered railroad corporations subject to the provisions of the act. As the system of bankruptcy is to be uniform throughout the United States, the solution of this question must depend upon the construction of the terms of the act itself, and not upon the particular legislation of the several states. "The provisions of this act shall apply to all moneyed, business or commercial corporations." To attempt to limit the word "business" in this clause of the statute, so as merely to be synonymous with "trading," would deprive it of any meaning beyond that included in the other words "moneyed and commercial." A trading corporation is a commercial corporation. The word "business" has a broader meaning as applied to corporations. Harris v. Amery, L. R. 1 C. P. 154. A railroad corporation is chartered to conduct the business of a common carrier of passengers and merchandise. Is there any principle of public policy which would require that the plain provisions of the statute should receive such a

judicial construction as would exclude this class of corporations?

We have already seen that the public policy of the state in which this corporation exists allows the alienation of the franchises and property of railroad corporations for the payment of their debts. The inconveniences attending such alienations are obvious. But as the argument ab inconvenienti has not been sufficiently strong to prevent the state from allowing these franchises to be sold, and the proceeds of the sale applied in payment of the debts of the first attaching creditors, it certainly does not apply with greater force to a statute providing for the more equitable division of the proceeds among all the creditors. The franchise which authorizes a number of persons to be incorporated and subsist as a body politic, with power to maintain perpetual succession, is not alienable or transferable without direct and positive legislative authority. This is the franchise to be a corporation. It is the life of the corporation. Coupled with the grant of this franchise of corporate existence are the grants to the corporation of those franchises to carry on the corporate "business;" which are grants of valuable privileges, and which, in the case of most private corporations, may be transmitted (as the history of this corporation shows they have been transmitted repeatedly) from one corporation to another, or to individuals, without great detriment to any public objects for which they were created. This distinction between those franchises of a corporation which are inalienable without a positive provision of law, and those possessing nothing in their nature inconsistent with their being transferred or assigned, has never been more clearly defined than in the learned opinion of Mr. Justice Curtis, in the case of Hall v. Sullivan R. Co., [Case No. 5,948.] "The franchise to be a corporation is therefore not a subject of sale and transfer, unless the law, by some positive provision, has made it so, and pointed out the modes by which such sale and transfer may be effected. But the franchises to build, own, and manage a railroad, and to take tolls thereon, are not necessary corporate rights: they are capable of existing in and being enjoyed by natural persons, and there is nothing in their nature inconsistent with their being assignable."

The grantee of the franchises of a corporation to operate a railroad can acquire no greater rights than the corporation itself has by the terms of the charter. The purchaser must take his title subject to all the conditions of the original grant, and subject to all duties and liabilities to the state, the public, and individuals, none of whose rights can be impaired by the transfer. It does not appear to us that there are any such inherent difficulties in the way of the sale and transfer of the property and franchises of a railroad, subject to these conditions and limitations, as would require us to give such a construction to the statute as would exclude the corporations from the operation of that clause of the bankrupt act, a literal construction of which clearly renders them liable to be dealt with under its provisions.

Motion to dismiss the petition overruled.

[The circuit court denied a petition to review this decree at the instance of Enoch G. Sweatt, another creditor. Sweatt v. Boston, H. & E. R. Co., Case No. 13,684.]