BUTT et al. v. C. F. MacNICHOL CONST. CO.

(Circuit Court of Appeals, Fourth Circuit. November 9, 1905.)

No. 595.

BANKRUPTCY—CORPORATIONS ENGAGED IN MANUFACTURING—BRIDGE BUILDING.

A corporation engaged in the business of building bridges, wharves, bulkheads, and driving piles, under contract, which has no plant where it manufactures bridges for the market, but does all of its work on the ground after contracting therefor, is not engaged in manufacturing, within the meaning of Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423], and is not subject to be adjudged an involuntary bankrupt thereunder.

[Ed. Note.—What persons are subject to bankruptcy laws, see note to Mattoon Nat. Bank v. Bank, 42 C. C. A. 4.]

Appeal from the District Court of the United States for Eastern District of Virginia, at Norfolk, in Bankruptcy.

I. W. Eason and A. B. Seldner, for appellants.
R. T. Thorp and T. D. Savage, for appellee.

Before PRITCHARD, Circuit Judge, and MORRIS and PURNELL, District Judges.

PRITCHARD, Circuit Judge. This is an appeal from a judgment of the District Court of the United States for the Eastern District of Virginia refusing to adjudge the appellee a bankrupt.

On the 4th day of December, 1904, the appellants filed their petition in the District Court, praying that the appellee, a corporation organized under the laws of Virginia, should be adjudged by the court to be a bankrupt, within the purview of the acts of Congress relating to bankruptcy, and alleging that the appellee is a corporation engaged principally in manufacturing, trading, and mercantile pursuits, and was insolvent and within four months had committed an act of bankruptcy by making a general assignment for the benefit of its creditors. To this petition the appellee filed its answer denying that it was engaged, or ever had been engaged, principally in trading, manufacturing, or mercantile pursuits. The petition was dismissed on the ground that the company did not belong to that class of corporations which may be adjudged involuntary bankrupts under the acts of Congress relating to bankruptcy. The only question involved in this case is as to whether the appellee, the C. F. MacNichol Construction Company, was engaged principally in manufacturing, trading, or mercantile pursuits, within the meaning of section 4, subsec. "b," of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) as amended by Act Feb. 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1905, p. 683], which reads as follows:

"(b) Any natural person, except a wage earner, or a person engaged chiefly in farming or the tillage of the soil, any unincorporated company, and any corporation engaged principally in manufacturing, trading, printing, publishing, mining, or mercantile pursuits, owing debts to the amount of one thousand dollars or over may be judged an involuntary bankrupt upon default or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act. * * *"

In order to be able to place a proper construction upon the words "any corporation engaged principally in manufacturing," it is necessary that we ascertain the correct meaning of the word "manufacture," as used in this connection. Webster's International Dictionary defines the word "manufacture" to mean:

"(1) To make wares or other products by hand, by machinery, or by other agency; as to manufacture cloth, nails, glass, etc.

"(2) To work, as raw or partly wrought materials into suitable forms for use; as, to manufacture wool, cotton, silk or iron."

It was held, in the case of In re Capital Pub. Co., 3 MacArthur, 405, 40 Am. Rep. 446, in construing the bankrupt statute, that the word "manufacture" should be construed to mean where raw materials, etc., are wrought by hand or art or machinery into the commodities for use. In discussing the question the court says:

"There can be no doubt that the word 'manufacture' was used in the statute in the limited sense in which it is commonly understood. * * * The industries to which the dictionaries and the writers on political economy limit this term are where the raw materials or natural substances are wrought by hand, art, or machinery into commodities for use; and the examples given are cloths, iron, shoes, cabinet work, glass, cotton, and silk goods, etc. This limitation of the term 'manufacture' is to be adopted as the true meaning of the bankruptcy law."

Hughes on Federal Procedure, a work which has recently been published, in discussing this question on page 86, says:

"As to the corporations against whom involuntary proceedings may be taken, the policy of the present law is very different from that of the act of March 2, 1867. That act allowed the proceeding against all moneyed, business, and commercial corporations and joint stock companies. The language of the present act, as seen above, is entirely different, and therefore the decisions construing the old act must be but cautiously used in construing the present one. The intent of Congress evidently was to limit very largely the corporations against whom such proceedings can be taken, probably for the reason that other remedies for the liquidation of insolvent corporations are abundant, and the further reason that a bankrupt law is not as necessary to a corporation as to an individual. * * * In view of this patent intent of Congress to limit the range of the bankrupt act as to corporations, it would seem the duty of the courts to construe the language of the act strictly in this respect, though this has not always been done." In re New York Water Co. (D. C.) 98 Fed. 711.

It appears from the record that the appellee has been engaged principally in the business of building wharves, bridges, bulkheads, and work of a like nature under contract with other persons. It is not contended that the appellee is engaged in the business of mining, printing, or publishing, and there is likewise nothing in the record to sustain the contention that appellee is engaged in mercantile pursuits. To construe this act to mean that corporations which are engaged in building bridges, wharves, bulkheads, and driving piles for foundations for buildings are engaged in manufacturing, trading, or mercantile pursuits would be to distort the meaning of the language employed therein, and thus apply the statute to a class of corporations which was not contemplated by the framers of this act. If we should construe the act in question as applicable to a corporation which builds bridges, wharves, bulkheads, and drives piles for foundations for buildings, it

would necessarily follow that a corporation which engages in the business of erecting a house or building a barn is a manufacturer within the meaning of the statute. It is commonly understood that corporations engaged in erecting houses and other buildings which require the raw material to be sawed, planed, fitted, and put together are construction and not manufacturing companies. The appellee had no principal place of business, nor was it engaged in manufacturing bridges to be placed upon the market, as such, but was simply engaged in constructing bridges, wharves, and bulkheads on the premises of those who employed it and driving piles for foundations for buildings under contract.

The president of the appellee company in answer to an inquiry as to what was the principal business of the bridge company, among other things, said:

"We build bridges. build wharves, build bulkheads, and drive piles for foundations for buildings."

And in answer to a further question the witness said his company had no regular workshop, but an office, and further described his business as follows:

"Q. In building bridges, do you only build the bridge under contract; for instance, where a county wanted a bridge, would you construct it? A. That is all, where the city council, or any other corporation wanted a bridge. Q. And you undertake to construct that bridge? A. Yes, sir; furnish all the materials for and build, and then we would supply the tools; of course, we have nothing to build with except tools, and we would supply the other part, and turn it into this work. Q. But you did nothing to the bridge until you had contracted with some person to put it up? A. That is right; we only frame them as we put them together. Q. Who did you build bridges for chiefly? A. I built them for railroads and turnpike companies, and private individuals; that is, different corporations, land corporations, etc. Q. This pile driving business; in the construction work you did for other people, like the city of Norfolk? A. Yes, sir. Q. Did you ever do any work for the city of Norfolk? A. Yes, sir; I was building Mahone's Lake work, building the bulkhead. Q. You never had any place, except some office for your business? A. Not a thing any where, only an office. Q. In other words, did you carry your tools with you from place to place? A. Yes, sir; and had a different place for tool place, and took them as we wanted them. Q. Your machinery was all portable? A. Yes, sir. Q. All of your machinery portable? A. Yes, sir."

A careful analysis of the testimony discloses the fact that appellee was not engaged in the manufacturing business in the common acceptation of the term. It was simply engaged in the doing of that kind of work which is necessary to be done by those who are employed to erect buildings, construct houses, and build walls to be used as foundations for buildings that are to be erected thereon. This class of work is easily distinguished from that of large establishments and shops which are maintained by and operated principally for the purpose of manufacturing the different structural parts of bridges, etc. The parts thus completed are the finished product, and it is only necessary to transport the same to the place where the bridge is to be erected and place them together in order to complete the structure. In such instances the raw material is by hand or machinery transformed into the finished product, and persons thus engaged are as essentially manufacturers as are those

who manufacture sawmills, steam engines, mowers, reapers, and other useful implements which are generally constructed so as to enable the manufacturers to ship the different parts to the point of delivery where they are placed together, thus completing the machines, the manufacture of which is the principal business of the parties thus engaged in placing such articles on the market. The finished product is the result of the process of manufacture, and the courts have universally held that persons thus engaged are manufacturers.

It is contended by the petitioner that there is no reason why a construction company should not be subject to the provisions of the bankrupt law; that, if the law is not so construed as to include this class of corporations, great injustice may be done by permitting such companies to prefer certain of their creditors to the exclusion of others. While such may be true, the court is not in a position to remedy the evil of which the petitioners complain, inasmuch as it has no power to alter, amend, or change existing law. We can only apply the law to such cases as are contemplated by the statute. Congress is the only body that has the power to enact laws for the purposes of adjusting any inequalities that may exist, and until such action by that body can be secured the courts are powerless to interfere.

For the reasons herein stated, we are of opinion that appellee corporation does not belong to the class which may be adjudged involuntary bankrupts.

Therefore the judgment of the District Court is affirmed.