WALKER ROOFING & HEATING CO., Inc., v. MERCHANT & EVANS CO. et al.

(Circuit Court of Appeals, Fourth Circuit. July 13, 1909.)

No. 883.

1. BANKRUPTCY (§ 91*) — INVOLUNTARY PETITION — CORPORATION — NATURE OF BUSINESS—BURDEN OF PROOF.

On an involuntary bankruptcy petition against a corporation, the burden is on petitioner to show by a preponderance of the evidence that the corporation conducted a business which could be properly termed "manufacturing," "trading," or "mercantile."

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 137, 138; Dec. Dig. § 91.*]

2. BANKRUPTCY (§ 72*)—INVOLUNTARY BANKRUPTCY—"MANUFACTURING CORPORATION."

The term "manufacturing," as used in the bankruptcy act of 1898, authorizing involuntary bankruptcy against corporations engaged in manufacturing, embraces only such corporations as are engaged in manufacturing as a business and selling their wares on the market, doing those things

usually done by those who not only manufacture their wares and goods, but place them on the market for sale either by wholesale or retail.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 5, p. 4364; vol. 8, p. 7716.

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

3. BANKRUPTCY (§ 72*)—INVOLUNTARY BANKRUPTCY—CONSTRUCTION CORPORA-TION—MANUFACTURING.

Where a corporation's articles provided that the corporation's activities should be the roofing of buildings and other structures, the installation of heating apparatus, the construction of houses and other structures, and the carrying on of a general roofing, heating, and construction business, and such was the corporation's principal business, its manufacturing being only incidental thereto, it was not engaged in manufacturing within the bankruptcy act of 1898, and was not subject thereto.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 17; Dec. Dig. § 72.*]

4. BANKRUPTCY (§ 91*)—CORPORATIONS—CORPORATE BUSINESS—EVIDENCE.

Evidence that a corporation's predecessors in business had sold consid-erable merchandise was irrelevant on the issue whether the corporation was a manufacturing or business corporation within the bankruptcy act.

'⎯' Note.—For other cases, see Bankruptcy, Cent. Dig. § 138; Dec. Dig. § 91.*]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk, in Bankruptcy.

Involuntary bankruptcy proceeding by the Merchant & Evans Com-pany and others against the Walker Roofing & Heating Company, In-corporated. From an order adjudging defendant a bankrupt, it ap-peals. Reversed.

In this case a petition for involuntary bankruptcy was filed against the appellant by three creditors, and a receiver appointed. It is alleged in the petition that the company "is and has been engaged principally in manufac-turing, trading, and mercantile pursuits," and the act of bankruptcy charged is its execution of a deed of general assignment. The company, answering, denied the allegations as to the character of its business, and denied that it is within the purview of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). The matter was referred to the referee, who held that it was not such a corporation as was amenable to the bankrupt law; that it was engaged in roofing and installing steam heat in buildings, and man-ufacturing nothing except as incident to the particular job; that, although it kept on hand cornices and things of that kind, this was simply to enable it to carry out its own work. In the report of the referee was a summary of the evidence. The creditors excepted to this report, and, after argument, the dis-trict judge adjudged the company to be a bankrupt within the true intent and meaning of the Acts of Congress relating to bankruptcy. From that order this appeal was granted.

Robert M. Hughes (W. W. Starke and J. D. Hank, on the brief), for appellant.

Edward R. Baird, Jr. (G. R. Swink, on the brief), for appellees.

Before PRITCHARD, Circuit Judge, and KELLER and McDOW-ELL, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). The only question to be determined is as to whether the appellant company "is and has been engaged principally in manufacturing, trading, and mercantile pursuits." The burden is on the petitioner in a proceeding of this character to show by a preponderance of evidence that the company conducted a business which could be properly termed "manufacturing," "trading" or "mercantile." In re Taylor, 102 Fed. 728, 42 C. C. A. 1; Chicago Co. (D. C.) 104 Fed. 67; In re Quimby, 126 Fed. 167, 61 C. C. A. 111; Loveland, Bankruptcy (3d Ed.) 276, 277.

The referee, in his report, among other things, made the following statement as to the facts upon which he based his report:

"Several witnesses were examined, and, except for the statement that the alleged bankrupt, in the course of its business, occasionally allowed the machinery of its establishment to be used for cutting out plates of tin roofing for other concerns, there was no evidence of any kind which differentiated this case from the case of McNichol Construction Company, decided by the Judge of this court, in which it was held that a construction company was not a manufacturing company within the meaning of the statute. The alleged bankrupt in this case was engaged in putting on roofing and installing steam heat in buildings. It manufactured nothing; its duties simply being to go on the roof of the house and cut tin, or other roof covering, to suit the particular job, and to complete the work in that particular. It is true that it kept on hand cornices and things of that kind, but this was simply in order to enable it to carry out its general purpose, and not for the purpose of sale in the general course of trade."

The following is a summary of the evidence taken before the referee:

"The record shows: That prior to July 18, 1908, F. B. Walker conducted a general roofing and heating business in the city of Norfolk, Va. That in conducting said business he operated a shop or plant in which was installed certain machinery. That he carried a stock of materials on hand. On July 18, 1908, this business was transferred to the Walker Roofing & Heating Company, Incorporated, which continued the business until August 6, 1908, when it executed a general deed of assignment to J. D. Hank, trustee. A petition in bankruptcy was filed about August 29, 1908. The receiver in bankruptcy, John W. Oast, Jr., testified that on his appointment as such receiver he took charge and caused a careful inventory to be made. This inventory showed machinery on hand of about $903, stock on hand of about $2,600; that the machinery consisted of two cornice brakes, squaring machine, a set of rollers, etc., used for the purpose of making cornice work from galvanized iron in sheets, cutting, edging, soldering, and rolling tin from box tin, and also used for the purpose of making furnace casings, heating pipes, gutters, etc., and also other small machinery in the factory; that in stock there was considerable box tin and galvanized iron in sheets; that from an inspection of the books there were no present contracts on hand sufficient to use this material in stock; that the only merchandise exchanged since the transfer to the company was with the Columbia Stove Company at actual cost. Mr. Odendthal of that company testified that the exchange was purely for accommodation, and the goods were billed at cost; that the books showed a large number of accounts with various concerns and people in this city for merchandise, and no labor was charged. One of these accounts was examined, and it showed that in less than one year merchandise had been delivered to the Bohn Roofing & Cornice Company engaged in similar business, to an amount of about $900, of which amount about $34 was returned in kind, and the balance paid for in cash. That these accounts were, however, contracted before the incorporation of the company now sought to be adjudicated bankrupt, and were sold altogether at

cost. F. B. Walker. testifying in behalf of the alleged bankrupt, stated that their principal business was roofing and heating: that they did not manufacture anything; that they did not use the machinery to manufacture anything; that the company had not bought any material, except for particular contracts, and the material was used, or to be used, on these particular contracts; that the company purchased tin in rolls as well as in boxes, and purchased some castings and piping already made up, and some cornice work made up. He also testified that the company had bought about $2,000 of box tin and galvanized iron in sheets; that they did only contracting business, and, in explaining the accounts referred to by the receiver, stated that they exchanged materials with other dealers when in need of a particular kind of material, and that same would be returned in kind and vice versa. Geo. B. Crow, for petitioners, testified that he was in a similar business, and was acquainted with the alleged bankrupt's business; that the cornice brakes referred to by the receiver were used for the purpose of making up cornice designs, and that these designs were made up from sheets of galvanized iron; that the designs can be purchased made up, but there is a saving in the price of more than 25 per cent.; that box tin is not placed on a roof in that shape, but that it is cut. squared, edged, soldered, and rolled; that it can be purchased either in boxes or in rolls, but that the price of box tin is about 25 per cent. cheaper than rolled tin."

In enacting this provision of the bankruptcy law it was evidently the purpose of Congress to exempt construction and other companies from its provisions where manufacturing is incident to the principal business in which they are engaged. While it was the purpose of Congress to subject those engaged in manufacuring, trading, and mercantile pursuits to the provisions of the bankruptcy act, nevertheless those who framed the act in question were undoubtedly cognizant of the fact that in many instances manufacturing is a part of and an incident to the main business, and yet in such cases it cannot be said that manufacturing is the principal business in which such companies are engaged. It is the manifest intention of the act to reach those who are engaged in manufacturing as a business, and as such sell their wares on the market and do those things that are usually done by those who not only manufacture their wares and goods but place them on the market for sale either by wholesale or retail.

In this instance there is a lack of proof to show that the appellant was principally engaged in manufacturing, trading, or mercantile business. This court in the case of Butt v. MacNichol Construction Company, 140 Fed. 840, 72 C. C. A. 252, held that a construction or contracting company did not come within the term "manufacture." That opinion is based upon the principle that, even though such companies may make things for use in their construction work that would be "manufactured" if made by a company for that special purpose, yet the making of such things by a construction company is only incident to their principal business and constitutes but a step in finishing the final product—such, for example, as a house, which, when completed, is permanently attached to the soil and thereby becomes a part thereof, and in itself is not to be classed among those things that are subject to sale or exchange as incident to manufacturing, trading, or mercantile business.

See, also, Contractors' Co. v. Hill Co., 148 Fed. 832, 78 C. C. A. 522; Hall & Kaul Co. v. Friday, 158 Fed. 593, 87 C. C. A. 23; Kings-

ton Realty Co., 160 Fed. 445, 87 C. C. A. 406; N. Y. Tunnel Co. (C. C. A.) 166 Fed. 284.

One of the best means of ascertaining the character of the business of a particular company is by an examination of the provisions of its charter in that respect. The following, contained in the charter of the appellant company, is an explicit statement as to the purposes of the company:

"The purposes for which it is formed are to roof buildings and other structures, to install heating apparatus in the same; and contract for and build houses or other structures and engage in a general roofing, heating, and construction business."

While it has been held that the charter of a company is not conclusive in this respect, yet this, among other things, is evidence which should be considered in determining the question as to the character of the business in which this company was engaged at the time the petition was filed herein. Not only does the charter limit the extent and character of the business in which this corporation was engaged, but it clearly defines the same; and this, taken in connection with the other evidence before the referee, shows conclusively that this company did not have any principal business not contemplated by its charter.

Act March 2, 1867, c. 176, 14 Stat. 517, was much broader in its scope in this respect than the present law. It included "all moneyed business or commercial corporations and joint stock companies," while section 4 of the present act includes only "corporations engaged principally in manufacturing, trading, printing, publishing, or mercantile pursuits." That the modification of this provision of the act of 1867 in this respect as found in the present law was intended to inure to the benefit of the debtor, for the reasons hereinbefore stated is unquestioned. This is fully borne out by the rule announced in the case of Philadelphia & Lewes Trans. Co., In re (D. C.) 114 Fed. 403; U. S. Hotel Co., In re, 134 Fed. 225, 67 C. C. A. 153, 68 L. R. A. 588; and Mac-Nichol Construction Co., In re, 140 Fed. 840, 72 C. C. A. 252.

It appears from the evidence that this company within less than a year had delivered to the Bohn Roofing & Cornice Company engaged in a similar business, merchandise amounting to about $900, of which amount about $34 was returned in kind and the balance in cash, and this fact is relied upon to support the contention that this company was engaged in a trading and mercantile business. However, the record shows that these accounts were contracted before the company now sought to be adjudged a bankrupt was incorporated and were sold altogether at cost. This evidence, therefore, was not material in so far as the issue involved in this controversy is concerned, and does not in the slightest degree tend to support the contention that the business in which the appellant was engaged is subject to the provisions of the bankruptcy law. The whole course of business carried on by the appellant clearly indicates that its principal business was that of roofing, heating, and construction; and that the articles manufactured and thus kept on hand were merely used as incidental to the business in which the alleged bankrupt was engaged.

We have carefully considered the cases relied upon by the appellee, and are of the opinion that they are not applicable to the case at bar.

For the reasons hereinbefore stated, the judgment of the lower court is reversed, and the case is remanded with instructions to proceed in accordance with the views herein expressed.

Reversed.