CITY OF HOLLAND et al. v. HOLLAND CITY GAS CO. et al.

(Circuit Court of Appeals, Sixth Circuit. February 13, 1919.)

No. 3211.

1. CORPORATIONS ⊗⇒586—HOLDING COMPANY—ACQUISITION OF OWNERSHIP—
ASSUMPTION OF OBLIGATIONS.

Holding company, which acquired control of gas company through ownership of stock and bonds, *held* not to have in effect supplanted the gas company, assumed its obligations, and become the owner of all its rights and property, despite the use made by the holding company of its power to select directors for the gas company, and also certain statements made by the holding company in its prospectus, reports, etc., to its own stockholders.

2. CORPORATIONS ⊗⇒590(1)—CONTROL BY STOCK OWNERSHIP—RELIEF AGAINST
CONTROLLING COMPANY.

Where one corporation acquires a controlling interest in the stock of another, and so secures opportunity alike to benefit or to injure the interests of such other company and its customers, it being engaged in the public business of supplying gas to a community, courts will not hesitate to look into such a situation, the controlled company having become bankrupt, and to grant merited relief against the holding company.

3. BANKRUPTCY ⊗⇒43—RIGHT OF CONTROL OF GAS COMPANY—INTERFERENCE
WITH SUIT IN STATE COURT.

A gas company in a city of Michigan, a majority of whose stock and bonds was owned by a Delaware holding company, no statute either of

Michigan or Delaware prohibiting such ownership by the Delaware company, was entitled to go into bankruptcy, and its proceedings therein cannot be regarded in judicial contemplation as an undue interference with suit by the city and another against the gas company and the holding company to enjoin an increase in the charge for gas, which the gas company had notified the city was necessary.

Appeal from the District Court of the United States for the Southern Division of the Western District of Michigan; Clarence W. Sessions, Judge.

Intervening petition by the City of Holland and Evert P. Stephan to vacate and set aside an order adjudging the Holland City Gas Company a bankrupt, as well as the bankruptcy proceeding itself, against the Gas Company and the Grand Rapids Trust Company, trustee in bankruptcy. From an order dismissing the petition, petitioners appeal. Affirmed.

Appeal from dismissal of intervening petition to vacate and set aside order adjudging Holland City Gas Company a bankrupt, and ·the bankruptcy proceeding itself. The city of Holland, a municipal corporation of Michigan, through ordinance approved March 10, 1903, granted permission to Bascom Parker and his assigns for a period of 30 years to lay and maintain gas pipes, mains, conduits and service pipes in the city streets and highways to supply manufactured gas for illuminating and fuel purposes both to the city and its inhabitants, at prices and subject to conditions therein provided. In September following, the rights thus granted were transferred to the Holland Gas Company, a Michigan corporation, and, in August 1905, to the Holland City Gas Company, another Michigan corporation; and the gas works and plant were thereafter, at least until commencement of the bankruptcy proceeding in question, maintained and operated and gas was supplied and sold in the name of appellee, the Holland City Gas Company.

However, on June 17, 1912, a corporation was organized under the name of American Public Utilities Company and pursuant to the laws of the state of Delaware, for purposes of production, distribution, and sale of artificial gas and electricity, and also the purchase of shares of stock in any corporation of "the state of Delaware, or of any other state, territory, or country." Later in that month this Delaware company purchased from the holders thereof a majority of the corporate shares in the Holland City Gas Company, and has purchased since then nearly all the rest of such shares, the total capital stock being $200,000 par value, divided into shares of $100 each, and prior to November, 1912, acquired from the various owners $160,500 par value of the gas company's outstanding first mortgage bonds, and since that time has purchased further bonds of the gas company, until the total holding is upwards of $298,000 par value, principally upon advances made by the Delaware company, some of them being on account of acquisition of what are known as the Zeeland properties for supplying gas in territory adjacent to the city of Holland. Through the shares of stock so obtained the Delaware company has ever since chosen and kept in place the directors, 5 in all, composing the board provided for the Holland City Gas Company, and these directors have from time to time selected from their number the officers of the company, viz. president, vice president, secretary, and treasurer.

In February, 1918, when the intervening petition was filed herein, the directors of the Holland City Gas Company were stockholders and directors of the Delaware company, though the latter company appears to have had 14 directors; the office of president of each company was held by the same person, and this is true of the positions of secretary and treasurer. The president of the two companies holds 1,932 shares of stock in the gas company in trust for the Delaware company, and the remaining directors of the gas company each hold one share of stock in that company.

The Delaware company owns and votes a large interest, doubtless a controlling interest, in the stock of various other corporations, viz. Albion Gas

& Light Company, at Albion, Mich.; Elkhart Gas & Fuel Company, at Elkhart, Merchants' Heat & Light Company, at Indianapolis, Valparaiso Lighting Company, at Valparaiso, all of Indiana; Wisconsin-Minnesota Light & Power Company, at La Crosse and other localities in Wisconsin and Minnesota; Jackson Light & Traction Company, at Jackson, Miss.; Utah Gas & Coke Company, at Salt Lake City; and Boise Gaslight & Coke Company at Boise, Idaho. The total assets of the Delaware company are valued at upwards of $12,845,000, admittedly comprising a "large percentage of the stock and of the bonds of the corporations" just mentioned.

A firm, Kelsey, Brewer & Co., composed of directors common to both the Holland City Gas Company and the Delaware company and claimed to be experienced in the operation and management of public utilities companies, is retained to give to all the companies above named the benefits of its experience.

On November 7, 1917, the Holland City Gas Company sent a communication to the mayor and council of the city, stating in substance that the operation of the gas properties at the prevailing prices could be continued only at an actual loss of money; that this was a fact under normal business and price conditions; that unless relief were provided at once it would be impossible under the present abnormal conditions to continue the operation of the plant; that from the 10th inst. the charge for gas in the city would be at the rate of $1.25 per thousand cubic feet, with a discount of 10 cents per thousand upon payment by the 15th of the month following that in which the gas would be consumed; that this price would "continue throughout the period affected by the duration of the war"; and that, should this increase fail to produce the necessary revenue to meet actual expenses, the company would be "compelled to close the plant and stop the supply of gas." This was 25 cents per thousand cubic feet in excess of the price then prevailing.

On December 1, 1917, the present appellants commenced suit against the gas company, and the Delaware company in the Ottawa circuit court, in chancery, setting up the facts touching the gas grant in question and its ultimate transfer to the Holland City Gas Company, alleging that this was the only source of gas supply for the inhabitants of the city; that there were upwards of 1,790 consumers dependent on gas for fuel, for cooking purposes, heat, and light; that in June, 1913, the gas company, its franchises and property, became the property of the Delaware company, which had ever since dominated the affairs and conducted the business of the gas company; that the price of gas was fixed by ordinance; that the Delaware company, through the gas company, sent the communication above pointed out to the mayor and council of the city; that such threatened increase in price was contrary to equity and good conscience, and would cause irreparable injury; and praying an order restraining defendants from exacting the threatened increase in price and also a mandatory injunction directing them to manufacture and supply gas to the city and its inhabitants in compliance with the provisions and rates of the ordinance. On December 3, 1917, an order was entered enjoining defendants from collecting a rate in excess of that fixed by the ordinance, and from closing the gas plant and stopping the supply of gas, until the further order of the court.

During the oral argument in the instant case we understood counsel to concur in the statement that the suit in the state court was commenced and the order of injunction granted without notice to the defendants in the case. It is to be inferred from one of the answers that nothing further was done in the case prior to the bankruptcy. The defendants filed separate answers, though it is not shown at what time. However, in the answer of the gas company, it is alleged that "since the time of the filing of the bill of complaint" it had "entered into voluntary bankruptcy" and had "been adjudged a bankrupt." The petition in bankruptcy was filed and the adjudication made February 1, 1918. It is stated in the opinion below that it was upon the voluntary petition of the Holland City Gas Company that the company was adjudged a bankrupt, and the parties stipulate that the petition as well as the adjudication was in the usual form. Appellants' intervention in the proceeding occurred later in the month, February 22d.

It is in effect alleged in the intervening petition, and admitted in the an-

swer herein, that, through either the receiver or the trustee in bankruptcy, gas is being supplied to meet the requirements of the inhabitants of the city of Holland. The answer alleges without denial that this is being done under a license from the city and at the rate of $1.25 per thousand cubic feet, which "was estimated to be the actual cost of production of the same without profit to the said trustee." Moreover, we understood at the oral argument that this was also sanctioned by an order of the court below, entered after hearing from both sides, and that the price was subject to the old discount of 10 cents per thousand cubic feet.

It is difficult to ascertain some of the relevant facts because of the omission to include in the record in addition to proofs of claims a further transcript of the bankruptcy proceedings (particularly a copy of the gas company's petition), and the dates of filing answers in the state court. The case was presented here upon the intervening petition, the joint answer of the bankrupt and trustee, certain exhibits, and a stipulation.

Charles H. McBride, of Holland, Mich., and Charles E. Ward, of Grand Rapids, Mich., for appellants.

Gerrit J. Diekema, of Holland, Mich., for appellees.

Before WARRINGTON and KNAPPEN, Circuit Judges, and KILLITS, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). Counsel urge the claims of appellants in the following order: (1) The Delaware company is bound to perform the gas contract; (2) the court-below was without jurisdiction, since under the Bankruptcy Act the gas company has no right to become a bankrupt; (3) a public service corporation cannot under the amendment of 1910 become a voluntary bankrupt; (4) the gas company has no real existence apart from the Delaware company; (5) the case is a fraud upon the courts and the public.

[1] The second and third claims involve questions of law which may be passed for the present. The first and the last two claims concern the Delaware company's ownership of shares of stock and mortgage bonds of the gas company. The theory is that through such ownership the Delaware company has in effect supplanted the gas company, assumed its obligations, and become the owner of all its rights and property. The claimed basis of this is the use that is made by the majority stockholder of its power to select directors for the gas company, and also certain statements made by such stockholder, the Delaware company, to its own stockholders. Identity in directors, as well as certain officers, of the two companies, has been pointed out in the statement. In a prospectus of the Delaware company offering to underwriters preferred and common stock of its own issue, and in reports to its stockholders, information is given concerning, not only the company's own business affairs, but also those of the companies in which it holds capital stock and bonds. In distinguishing, for intance, its assets from those of the other companies, the company at times speaks in terms which at first sight create a wrong impression as to the actual relationship between the Delaware company and the companies in which it is interested. Use is made of such words and expressions as "control," "constituent companies," "subsidiary companies," "properties intrusted to its management," "your properties,"

"financing subsidiaries," and from these and the associated language appellants' counsel infer intent on the part of the Delaware company to assert absolute ownership in itself of franchises and property of the so-called constituent companies, and so counsel rely on such expressions as these to support an allegation of the intervening petition:

"That on, to wit, the 30th day of June, 1912, the Holland City Gas Company, its franchise, property, * * * became the property" of the Delaware company.

That was the time, as the statement points out, when the Delaware company made its first purchase of stock and bonds issued by the gas company. The prospectus and reports, however, when considered as an entirety, show that the terms in dispute were employed as convenient means for identifying and differentiating companies and objects, and not to describe precise corporate relationships. This is made clear by other and explicit statements. For example, it is stated in one of the reports:

"Control of this company (Holland City Gas Company) by American Utilities Company is maintained by the ownership of its capital stock."

The same language is used with the same object as respects all the other so-called subsidiary companies. These statements also explain a doubtful expression, found at the beginning of the same report, where it is said:

"With the organization of the American Public Utilities Company in 1912, there came into the possession of a single financing and directing organization a group of public service properties having peculiar advantages for economical supervision and operation."

This could not have meant, as counsel claim, that the Delaware company was thus asserting "ownership" of the "group of public service properties" mentioned, since, as we have seen, the company specifically stated in the same instrument that it controlled those companies through its ownership of capital stock therein. Again, in reporting its assets, the Delaware Company sets out its total holdings of "stocks of subsidiary companies," also of bonds, treasury stock, marketable securities, accounts receivable, cash, and the like, but of tangible property only "furniture and fixtures"; also a comparative statement expressly showing "gross earnings of subsidiary companies" for the years 1914, 1915, 1916, and 1917. Another example of the Delaware company's ambiguous statements is found in the report of December, 1917, to its own stockholders in relation to steps taken to secure an increase in rates for gas supplied in the city of Holland. It is there said:

"It has been the judgment of the officers of the company that this result is preferable to suffering further loss over the period of the franchise."

It is claimed for appellants that this allusion to officers means officers of the Delaware company; yet when the entire report is read, in connection with the report of the Holland City Gas Company to the mayor and council, mentioned in the statement, we think it plain that the term "officers of the company" meant the officers of the gas company.

[2] Whatever, then, may in other respects be said of the relations between the Delaware company and the gas company, we cannot think that the use of doubtful phrases, like those shown in the prospectus and reports just considered, warrants a conclusion that the stockholder, the Delaware company, had become the owner, as appellants allege, of the franchise and property standing in the name of the gas company, and it is not suggested that any formal transfer in this behalf has been made. It must be conceded, however, that through acquisition of shares of stock in the gas company, and through interrelations of the directorates and officers of the two companies, the Delaware company secured opportunity alike to benefit or to injure the interests of the gas company and its patrons. Courts will not hesitate to look into a situation like this and to grant merited relief. Corporate forms afford no protection where it is sought through such means to impose unlawful burdens or to commit fraud. Chicago, M. & St. P. Ry. v. Minn. Civic Ass'n, 247 U. S. 490, 501, 38 Sup. Ct. 553, 62 L. Ed. 1229. What, then, is to be deduced under the present record from the stock ownership of the Delaware company in the gas company and the official relations of the two companies?

[3] It is to be noticed that the Delaware company is not a party to this cause, and hence may not be bound by any conclusion reached here. Appellants insist, moreover, that it cannot be held in this case that the Delaware company is not bound to perform the gas contract, for the reason that the state court first obtained jurisdiction of that subject. We cannot, however, avoid passing on the status and condition of the gas company. Accordingly it is to be observed that there is no statute of the state of Michigan which forbids a corporation of another state, like the Delaware company, to purchase and hold shares in a Michigan corporation such as the gas company. It is distinctly shown that the Delaware company is possessed of power and authority to acquire and hold such shares; and what is said of shares of stock is also true of corporate bonds. In a word, no public policy prevailing in the state of Michigan is claimed to have been violated by the Delaware company's ownership of stock and bonds of the gas company. Further, it is not shown that the Delaware company, in its capacity as a stockholder or otherwise, has diverted or depleted, or in any wise impaired or damaged, the revenues, assets, or property of the gas company. The evidence, on the contrary, tends strongly to show that the Delaware company has through financial support materially aided and benefited the gas company. This obviously inured to the benefit of the City of Holland and its inhabitants, as patrons of the gas company; and yet it is not shown that the Delaware company has derived any profit from its ownership of stock in the gas company, or anything more than current interest on the bonds of that company.

Despite the interlocking scheme of directors and officers of the two companies, the case is devoid of evidence that these officials have through either acts or omissions prejudiced the interests of the gas company or interfered with its due discharge of corporate duty. We do not perceive, and it is not shown, how it could have been to the interest of the Delaware company or the directors or officers of the gas

company to inflict injury of any sort upon the rights or property of the gas company. Enough has already been said of the Delaware company's relations to the public service companies before named, including the Holland City Gas Company, to disclose a distinct purpose of the Delaware company to secure current and continuing income through its investments in these companies. Apart from such a purpose the Delaware company does not seem to have any reason to exist. No legitimate way of maintaining such a company is apparent, except through income derived from rightful earnings of the plants belonging to the other companies—in brief, the success of that company appears to depend upon the success of the others—since the interests of the Delaware company apparently reside, as here, in the capital stock of those companies.

Furthermore, it is to be observed that the Delaware company's holdings are not in naturally competing companies. The companies named in the present record are widely separated and operate in distinct municipalities, and the gas plant here in question is the only one in the city of Holland and is entirely within the state of Michigan. The case, therefore, does not fall within any principle opposed to the suppression of competition, as, for instance, the underlying principle of the Northern Securities Case, 193 U. S. 197, 24 Sup. Ct. 436, 48 L. Ed. 679, nor within any statutory inhibition against interlocking directorates similar to that of the Clayton act (Act Oct. 15, 1914, c. 323, 38 Stat. L. 732, § 8 [Comp. St. § 8835h]). It is to be added, in the language of the learned trial judge when speaking of the gas company:

"There has been no concealment of name or business operations. The local company has its own officers, its own office and books of account. It is the older company, and, so far as the public is concerned, there has been no change in the character of its business since its incorporation. It has at all times transacted business in its own name. It has complied with all state and municipal requirements. It has been dealt with and recognized by the state, the city of Holland, and its customers as a separate corporation."

Hence, under the facts of the instant case, we do not see why the status of the gas company should not be determined by the decisions cited and distinguished in Chicago, Minneapolis & St. Paul Ry. Co. v. Minn. Civic Ass'n, supra, 247 U. S. at page 500, 38 Sup. Ct. at page 557 (62 L. Ed. 1229) where Mr. Justice Clarke, speaking for the court, interpreted the rule of those decisions to be:

" * * * Ownership, alone, of capital stock in one corporation by another, does not create an identity of corporate interest between the two companies, or render the stockholding company the owner of the property of the other, or create the relation of principal and agent or representative between the two."

In addition to the ownership of stock involved in all of those cases, at least two, namely, Pullman Car Co. v. Missouri Pacific Co., 115 U. S. 587, 589, 596, 6 Sup. Ct. 194, 29 L. Ed. 499, and Peterson v. Chicago, Rock Island & Pac. Ry., 205 U. S. 364, 390, 27 Sup. Ct. 513, 51 L. Ed. 841, show that such ownership had in fact been used to create official relations between the stockholding companies and the com-

panies whose issues of stock were so held; and it may therefore be safely concluded that the foregoing interpretation was intended to embrace corporations also officially related, where, as here, the company whose stock is so held has been organized for legitimate purposes and separately maintained and employed in the rightful exercise and performance of its powers and duties. Such was the ruling principle applied by this court in what are called the Carpenter Cases, as respects the relations between the railroad company and the coal company and also the effort to hold the former upon the bonds of the latter. Wheeling & L. E. R. R. Co. v. Carpenter, 218 Fed. 273, 274, 276, 280, 134 C. C. A. 69; New York Trust Co. v. Carpenter, 250 Fed. 668, 674, 163 C. C. A. 14.

It results that the Chicago, M. & St. P. Ry. Case serves at once to distinguish the present controversy from the controlling principle of the decision in that case, and to render the decisions here relied on by appellants inapplicable. Clearly, then, the gas company was not supplanted by the Delaware company prior to the time the bankruptcy proceeding was instituted; and it cannot be that such a transition could have been effected by that proceeding. If we assume for the moment that a public service corporation is included within the true intent of the amendment of June, 1910 (36 Stat. p. 838, c. 412) to the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 544), and that the gas company was actually bankrupt, the right of that company to secure the benefit of the statute could not be impaired or defeated merely because the right was exercised through the control or at the instance of the Delaware company; for this mode of exercising the right was in no sense wrongful on the part of either company and so cannot be regarded as a fraud or imposition upon the city of Holland or any of the gas consumers. The jurisdiction of the federal court in bankruptcy was therefore properly invoked; under the bankruptcy law this jurisdiction was essentially exclusive, and the proceeding so instituted cannot in judicial contemplation be regarded as an undue interference with the suit begun in the state court. In re Yaryan Naval Stores Co., 214 Fed. 563, 565, 131 C. C. A. 15 (C. C. A. 6). After careful consideration we are convinced that Judge Sessions rightly concluded as matter of law that the gas company was entitled to become a voluntary bankrupt, and, apart from the remark that the company is a "private 'business' corporation," we approve the reasoning of the opinion. The facts upon which the gas company was adjudged a bankrupt must be accepted as sufficient to justify the order of adjudication. In view of some of the claims urged we deem it proper to set out substantially all the opinion below. The order dismissing the intervening petition will be affirmed.

SESSIONS, District Judge. Upon its voluntary petition, the Holland City Gas Company has been adjudged a bankrupt by this court. The city of Holland and a customer of the bankrupt, who has been and is a consumer and user of gas produced at its plant, have filed their petition to set aside the adjudication and to dismiss the bankruptcy proceedings. The grounds of the application as set forth in the present petition, are in substance:

(1) That a public service corporation like the bankrupt is not entitled to claim or obtain the benefits of the Bankruptcy Act;

(2) That the Holland City Gas Company has ceased to exist as a separate and distinct corporation, and has become and is merely an instrumentality, agent, or department of the American Public Utilities Company, a Delaware corporation; and

(3) That the adjudication was fraudulently procured.

1. In the case of Gibbs v. Baltimore Gas Co., 130 U. S. 396, 408, 410, 411, 9 Sup. Ct. 553, 557, 558 (32 L. Ed. 979) the Supreme Court said: "The supplying of illuminating gas is a business of a public nature to meet a public necessity. It is not a business like that of an ordinary corporation engaged in the manufacture of articles that may be furnished by individual effort. * * * It is also too well settled to admit of doubt that a corporation cannot disable itself by contract from performing the public duties which it has undertaken, and by agreement compel itself to make public accommodation or convenience subservient to its private interests. * * * At common law corporations formed merely for the pecuniary benefit of their shareholders could, by a vote of the majority thereof part with their property and wind up their business, but corporations to which privileges are granted in order to enable them to accommodate the public, and in the proper discharge of whose duties the public are interested, do not come within the rule."

The case above cited illustrates and exemplifies the strongest and best argument that can be urged against permitting a public service corporation voluntarily to do any act which must result in disabling it from performing its public duties. In the absence of statutory direction and mandate, such argument would be, not only persuasive, but controlling. But implied limitations, even though based upon grounds of public policy or necessity, must yield to positive and express legislative enactment. Congress has spoken in no uncertain terms upon the subject of the right of all corporations, with certain specified exceptions, to become voluntary bankrupts. Section 4a of the Bankruptcy Act provides that "any person, except a municipal, railroad, insurance or banking corporation, shall be entitled to the benefits of this act as a voluntary bankrupt." Comp. St. § 9588. This language is plain and unambiguous and can have but one meaning. The Holland City Gas Company is a "person" (section 1a19 [Comp. St. § 9585]), and is not a municipal, railroad, insurance, or banking corporation; hence it is entitled to become a voluntary bankrupt. Collier on Bankruptcy, p. 142.

With laborious effort counsel have built an argument upon the provisions of section 4b of the Bankruptcy Act relating to involuntary bankrupts. Of course, such an argument can have no application to a proceeding in voluntary bankruptcy like the present one; but, if it could, the result would be the same. It is true that in some cases arising prior to the amendment of this section in 1910, the courts, by a process of reasoning not entirely clear or satisfactory, reached the conclusion that public service corporations could not be adjudged involuntary bankrupts. In re Hudson River Electric Power Co. (D. C.) 173 Fed. 934; Id., 183 Fed. 701, 106 C. C. A. 139, 33 L. R. A. (N. S.) 454; In re Bay City Irrigation Co. (D. C.) 135 Fed. 850. In one case (In re Wilkes Barre Light Co. [D. C.] 224 Fed. 248) arising subsequent to the amendment of 1910 a District Court reached the same conclusion. But a most cursory examination of the opinion in that case will show that the amendment was either overlooked or ignored. Whether the reasoning of these cases is sound or unsound is quite immaterial, because they have no application to the amended statute.

The amendatory act of 1910 effected radical changes in the law and made many corporations subject to involuntary adjudication which could not have been proceeded against under the provisions of the original act. For example, it was held that hotel companies (Toxaway Hotel Co. v. Smathers, 216 U. S. 439, 30 Sup. Ct. 263, 54 L. Ed. 558; In re United States Hotel Co. [C. C. A. 6] 134 Fed. 225, 67 C. C. A. 153, 68 L. R. A. 588), water companies (In re N. Y. & W. Water Co. [D. C.] 98 Fed. 711), laundry companies (In re White Star Laundry Co. [D. C.] 117 Fed. 570; In re Eagle Steam Laundry Co. [D. C.] 178 Fed. 308), real estate companies (In re Kingston Realty Co., 160 Fed. 445, 87 C. C. A. 406), construction companies (Butt v. C. F. MacNichol Construction Co., 140 Fed. 840, 72 C. C. A. 252), warehouse companies (In re Pacific Coast Warehouse Co. [D. C.] 123 Fed. 749), and res-

taurant companies (In re Wentworth Lunch Co., 159 Fed. 413, 86 C. C. A. 393), were not subject to involuntary bankruptcy proceedings under the provisions of the Bankruptcy Act prior to the amendment of 1910. Since the amendment, which provides that "any moneyed, business or commercial corporation, except a municipal, railroad, insurance or banking corporation, * * * may be adjudged an involuntary bankrupt," the adjudication of such corporations has become so common as to be an everyday occurrence. There is no room for doubt that the Holland City Gas Company is a private "business" corporation.

Section 4b of the Bankruptcy Act now conforms closely to the corresponding provisions of the Act of March 2, 1867, c. 176, 14 Stat. 517, and it must be assumed that, in the substantial re-enactment of the earlier statute, Congress had in mind the interpretation and construction of that act by the courts while it was in force. It was then uniformly held that public service corporations were subject to adjudication as bankrupts and that no principle of public policy required "that the plain provisions of the statute should receive such a judicial construction as would exclude this class of corporations." Adams v. Boston H. & E. R. Co., 1 Fed. Cas. 90, Case No. 47; same case affirmed 23 Fed. Cas. 530, Case No. 13,684; Winter v. Iowa, M. & N. P. Co., 30 Fed. Cas. 329, Case No. 17,890; New Orleans R. R. Co. v. Delamore, 114 U. S. 501–506, 5 Sup. Ct. 1009, 29 L. Ed. 244.

2. The American Public Utilities Company owns or controls all of the stock and substantially all of the mortgage bonds of the Holland Gas Company. The stock was purchased from former stockholders. Part of the bonds were bought in the open market and the balance were issued for money advanced and loaned. The Utilities Company through its stock ownership controls the Gas Company in the same way and to the same extent that stockholders usually control corporations. * * * Under such circumstances, it cannot be said to have become merged in the other company or to have lost its corporate identity. As was said by the Circuit Court of Appeals of this circuit in Richmond & Irvine Construction Co. v. Richmond, N. I. & B. R. Co., 68 Fed. 105, 108, 15 C. C. A. 289, 292 (34 L. R. A. 625): "The fact that the stockholders in each may have been the same persons does not operate to destroy the legal identity of either corporation. Neither does the fact that the one corporation exercised a controlling influence over the other through the ownership of its stock or through the identity of stockholders, operate to make either the agent of the other, or to merge the two corporations into one. There is no pretense of any fraudulent concealment of the interest of the one corporation in the other, or of the fact that the persons controlling the one corporation likewise controlled the other." See, also, Pittsburgh & Buffalo Co. v. Duncan (C. C. A. 6) 232 Fed. 584–587, 146 C. C. A. 542; Kardo Co. v. Adams (C. C. A. 6) 231 Fed. 950–964, 146 C. C. A. 146; Bigelow v. Calumet & Hecla Mining Co. (C. C. A. 6) 167 Fed. 721–728, 94 C. C. A. 13; In re Watertown Paper Co. (C. C. A. 2) 169 Fed. 252, 255, 256, 94 C. C. A. 528; C. Crane & Co. v. Fry (C. C. A. 4) 126 Fed. 278, 285, 61 C. C. A. 260.

3. The petition herein is replete with charges of concealment, deception and fraud. It is sufficient to say that the charges are not sustained by the proofs. Upon this record, the imputation of fraud rests largely, if not wholly, upon inferences sought to be drawn from the fact that, prior to the filing of the petition in bankruptcy, a suit was instituted in one of the state courts by these petitioners against the American Public Utilities Company and the Holland City Gas Company to restrain them from closing the bankrupt's gas plant and discontinuing its service and also from increasing rates as proposed and threatened. A temporary injunction was issued by the state court, but the case has not been tried upon the merits. No receiver has been asked for, and no attempt has been made to disturb or interfere with the possession and control of the plant or business. The sole purpose of the suit was to enforce what is claimed to be a contract obligation contained in the franchise granted by the city of Holland to a predecessor of the bankrupt. No creditor of the bankrupt, as such, is a party to the suit. The Gas Company insisted that it could not manufacture and furnish gas for the price fixed in and by its franchise and that it was suffering serious loss in the operation of its plant and threatened to discontinue its service unless it was permitted

to charge increased rates. Assuming that its threatened action would constitute a violation of its contract obligations, it is difficult to perceive how either the suit in the state court, the ultimate issues there involved, or the conduct of the bankrupt in applying to this court evidences such fraud as would bar an adjudication and prevent it from seeking or obtaining the benefits of the Bankruptcy Act. It is unnecessary to determine at this time the effect of the adjudication in bankruptcy upon the suit in the state court. Certainly it cannot affect any claims or rights which petitioners, or either of them, may have against the American Public Utilities Company.

The petition to vacate the adjudication will be denied.